IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER GRABIANSKI and JACK STAPLETON, on behalf of themselves and others similarly situated,** | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 284 |
| v. | ) ) | |
| **BALLY TOTAL FITNESS HOLDING CORP., and L.A. FITNESS INTERNATIONAL, LLC** Defendants. | ) ) ) ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs Jennifer Grabianski ("Grabianski") and Jack Stapleton ("Stapleton") brought this putative class-action law suit against Bally Total Fitness Holding Corp. ("Bally") and L.A. Fitness International, LLC ("L.A. Fitness"). Plaintiffs were holders of lifetime memberships at Bally. They allege that following the acquisition of certain Bally clubs by L.A. Fitness, their lifetime contracts were wrongfully terminated. Each defendant brought motions to dismiss. For the reasons provided, the motions are granted, but Plaintiffs are given leave to replead their complaint within 30 days of the date of this order.

I.

The Plaintiffs' complaint sets forth the following allegations. On Nov. 30, 2011, L.A. Fitness acquired 171 clubs from Bally, located in several states. Following the acquisition, Plaintiffs contend that L.A. Fitness "acquired or

otherwise assumed responsibility for" Bally lifetime membership agreements.  Compl., ¶ 2.  Defendants have either terminated those contracts or breached them.

Grabianski and Stapleton are both residents of Illinois who had contracts with Bally.  The contracts at issue were originally sold decades ago, before most states began to prohibit health clubs from selling lifetime memberships.[1]  Bally was one of the largest owners of health clubs in the United States, but filed bankruptcy at the end of the last decade.  After emerging from bankruptcy in 2009, Bally downsized, including by entering into an Asset Purchase Agreement ("APA") with Fitness International, Inc., an affiliate of L.A. Fitness.

Prior to this transaction, Bally owned and operated about 271 fitness clubs in the United States.  The APA provided for the sale of 171 of those clubs for approximately $153 million.  The sale included all of the clubs in Illinois and several other states.  The remaining 100 clubs continue to be operated under the Bally name.

Since the closing of the APA on Nov. 30, 2011, Plaintiffs contend, hundreds if not thousands of Bally customers have learned that their lifetime memberships are no longer being honored by Bally or L.A. Fitness, and have effectively been

---

[1]  In Illinois, such contracts are prohibited by the Physical Fitness Services Act, 815 ILCS § 645/8(c).

terminated. Plaintiffs and the class members paid in excess of $1,000 for the lifetime and long term memberships, and also typically pay an annual fee of between $10 and $25.

Plaintiffs' and the class' lifetime and long-term membership contracts "provide that they may use any Bally's club in the country, at any time such clubs are open for business, with no exception." Compl., ¶ 23. Additionally, holders of Bally lifetime memberships were permitted to resell those contracts, and there was a well-developed secondary market for them.

On Dec. 1, 2011, many Bally lifetime members received an email from Bally notifying them that L.A. Fitness would assume their memberships effective immediately. That email said:

> Dear Member:
>
> Bally Total Fitness® has made the decision to focus our portfolio of fitness centers in certain key markets. As a result, we will be transitioning ownership of a number of our clubs, including your home club, to Fitness International, LLC, an affiliate of L.A. Fitness International, LLC ("LA Fitness").
>
> LA Fitness will take over the clubs it is acquiring and assume your membership agreement effective Dec. 1, 2011. As a result your payments will be collected by LA Fitness going forward using the same account as did Bally$^{SM}$. You can find more details on our website and at www.lafitness.com.
>
> It has been our pleasure to serve you, and we thank you for your loyalty to Bally Total Fitness through the years. We wish you continued success in pursuing and achieving your fitness goals.

Compl., ¶ 24.

Plaintiffs contend that L.A. Fitness publicly stated that it assumed responsibility for the lifetime contracts. Specifically, L.A. Fitness' web site said:

Our objective in general is to make this transition as easy as possible for both the members and employees. We will be servicing all of the membership agreements that were acquired from BTF. The majority of the acquired clubs will remain open, but some will be closing before the end of the year. If we close a facility, we will transfer those members' agreements to a nearby facility, either an acquired BTF or an LA Fitness. We plan to add new equipment to many of the clubs, and we also have plans to remodel, expand or relocate a number of the clubs to larger and new facilities.

**UPDATE** LA Fitness has decided to simplify the access rules and give all of the acquired Bally Total Fitness ("BTF") members access to current LA Fitness clubs as described below:

. BTF "Local" members will have access to LA Fitness clubs and acquired BTF clubs in the state of enrollment*;
. BTF "National" members will have access to those clubs in all states*; and
. Acquired BTF members who only have single club access will continue to have access to that single club (or, if that club has closed, another BTF or LAF club nearby).

Members who have purchased lifetime memberships at the acquired BTF clubs will continue to have access as described above.

Compl., ¶ 25.

Notwithstanding these representations, Plaintiffs contend, Bally failed to make adequate provisions for members to continue using the facilities that Bally sold to L.A. Fitness. Additionally, Bally has denied access to its remaining facilities,

4

or provides access only to clubs that are hundreds of miles away from members' homes, making their memberships worthless.

Plaintiffs allege that in order to evade its obligations under the lifetime contracts, Bally has unilaterally imposed a "home club" or "club of origin" restriction on its members that does not exist in these contracts. Following the L.A. Fitness acquisition, Bally has taken the position that the club where the membership was originally sold remains the "home club," even though the memberships were originally sold decades ago. Bally and L.A. Fitness have used this "home club" requirement to effectively terminate lifetime and long-term membership contracts because L.A. Fitness will only acknowledge a Bally lifetime contract when the member's "home club" is one of the clubs it acquired.

This has resulted in termination of hundreds, if not thousands, of valid contracts, Plaintiffs allege, in particular in these situations:

(1) In some cases, the membership was originally purchased at a Bally club that closed before the L.A. Fitness acquisition, and the member was using a Bally club acquired by L.A. Fitness. These members are being denied access to L.A. Fitness clubs because L.A. Fitness did not acquire the long-closed Bally clubs, which Bally claims are the members' "home club." These members are also effectively locked out of Bally clubs, given that Bally

5

no longer owns or operates any clubs in the region in which the member resides.

(2) In some cases, the members are secondary purchasers of Bally lifetime or long-term contracts. These members typically reside in a different region than the original purchasers, which Bally knew because it required secondary purchasers to complete membership transfer documents. Nonetheless, Defendants have refused to recognize the transfer of such memberships to the club near where the secondary purchaser resides. These clubs are now owned by L.A. Fitness, and the secondary purchasers have no way of using the Bally facilities where their memberships were originally purchased, which are usually hundreds of miles away from their homes.

(3) In some cases, the members relocated to a different region from where they originally purchased their memberships, and were able to use Bally clubs near their homes prior to the acquisition. However, after the L.A. Fitness acquisition, these members learned that Bally still considers the original Bally's facility to be their "home club." As a result, these memberships have not been transferred to L.A. Fitness, and these members can no longer use the gym facilities near their homes. They cannot use the facilities where the memberships were originally purchased, because these gyms are hundreds of miles away from their homes.

Plaintiffs allege that Bally has deprived Plaintiffs and the class of the use and enjoyment of their lifetime contracts, and that L.A. Fitness has failed to honor many of these contracts and has "attempted to take advantage of Plaintiffs and the Class by requiring them to purchase new L.A. Fitness memberships if they wish to have access to the former Bally clubs." Compl., ¶ 31.

Plaintiffs contend that L.A. Fitness has attempted to unilaterally modify the existing lifetime and long-term membership contracts by charging additional fees and diminishing the rights that members have under the contracts. For example, L.A. Fitness has limited the lifetime contracts by restricting access to one location, despite the fact that the contracts entitle members to unrestricted access to all Bally facilities across the country, denying members access to racquetball courts, and prohibiting resale of the contracts, despite the fact that they are transferrable on their terms. Those class members who have not accepted the modified terms have had their contracts terminated without compensation.

Plaintiff Stapleton bought Bally "Premier Plus" memberships for himself and his wife in 1995. The memberships originated at a Bally club in St. Louis, and were purchased from former Bally members. They cost more than $500 each. Under the terms of the membership agreements, the Stapletons were not required to pay Bally a transfer fee, but they completed transfer forms that

7

stated that they resided in Elmhurst, Ill. The lifetime contracts required Stapleton to pay a $25 annual maintenance fee for each of the members and "provided unlimited access to all Bally's clubs nationwide." Compl., ¶ 38. The Stapletons never used any Bally's facilities in St. Louis, and the club of origin closed many years ago. The Stapletons used the Bally club in Villa Park, Ill., which was one of the clubs acquired by L.A. Fitness on Nov. 30, 2011. Mr. Stapleton contacted Bally to request that his membership be transferred to L.A. Fitness so he could continue to use the club, but was informed that he had failed to transfer his membership to the Villa Park club, and that Bally considered a club in St. Louis that Stapleton had never used, and which was not the club or origin for the contract he acquired, to be his "home club."

The Bally employee told Stapleton that since that St. Louis club was not sold to L.A. Fitness, Bally could not transfer their memberships to L.A. Fitness. The St. Louis club is about five hours from their home; the Stapletons cannot use it. Mr. Stapleton then contacted L.A. Fitness. He received an email from L.A. Fitness informing him that the company would not transfer his lifetime membership to L.A. Fitness.

Plaintiff Grabianksi bought a "Premier Plus" lifetime membership in 1999 or 2000 from a former Bally member who originally purchased the contract at a Bally club in Amherst,

N.Y., in 1986.  Grabianski paid a transfer fee of $100 and provided Bally with transfer paperwork indicating that she resided in Illinois.  Grabianski pays a $10 annual fee for her membership.  She has never been to Amherst, N.Y., and used the Schaumburg, Ill., club, which was acquired by L.A. Fitness.

After the acquisition, Bally told Grabianski that its records indicated she was a member of the Amherst, N.Y. club, a club which she had never used.  She was told she could work out at a Bally club in Wisconsin, more than an hour away from her home.  On Jan. 6, 2012, Grabianski went to the Schaumburg club, but was told she was not in the computer system, that L.A. Fitness did not acquire her membership, and that she would need to enter into a new membership if she wanted to use the gym. Grabianski then contacted Bally, which told her there was a window of time in which she could have transferred her membership from Amherst, N.Y., to Illinois, but that window closed on Dec. 15, 2011.  A customer service agent for Bally told Grabianksi that L.A. Fitness was supposed to notify her of her option to transfer, while L.A. Fitness blamed Bally.  As a result, Grabianski alleges, she has effectively lost the use of her lifetime contract.

Plaintiffs bring two claims against Defendants, one for breach of contract (Count I), and one for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

9

("ICFA"), 815 ILCS 505/1, *et seq.* (Count II).  The breach of contract claim alleges that "L.A. Fitness acquired Bally lifetime and long-term membership contracts and the obligations to provide gym access and other benefits owed to members pursuant to the terms of those contracts." Compl., ¶ 65.  The complaint goes on to allege, "Once L.A. Fitness acquired 171 clubs from Bally on Nov. 30, 2011, neither Bally nor L.A. Fitness would honor the lifetime agreements in accordance with their terms, and, as alleged above, effectively terminated them."  Compl., ¶ 66. Plaintiffs additionally allege that this conduct violated the implied covenant of good faith and fair dealing in the lifetime contracts.

The ICFA claim alleges that Defendants' conduct in failing to transfer lifetime and long-term membership contracts from Bally to L.A. Fitness deprived Plaintiffs and the class of the value of their memberships.  It also asserts that Defendants concealed from Plaintiffs and the class the cutoff date for transferring memberships from the members' "home clubs," preventing members from continuing to use their memberships; concealed the procedures required to maintain those memberships at clubs near their homes; and imposed new fees and dues in excess of those permitted under the membership agreements.

Both Bally and L.A. Fitness have moved to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P.

12(b)(6).  Bally's motion argues, in part, that it cannot be liable for breach of contract because the complaint alleges that the contracts at issue were assigned to L.A. Fitness, and because the contracts at issue provided access to "any Bally clubs in the country, at any time such clubs are open for business, with no exception."  Bally Mem. in Supp. of Mot., 5.  The clubs in question are no longer owned or operated by Bally, so no claim for breach of contract may lie against it for failure to allow access to these clubs, Bally contends.

After Bally's motion was fully briefed, L.A. Fitness filed its own motion to dismiss, in which it attached the APA and argued that it conclusively shows that the lifetime contracts were not assigned to it, and so the complaint against it should be dismissed.  Both Defendants also argue that the ICFA claims are insufficiently pleaded and deficient for various reasons.

II.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right

11

to relief above the speculative level." *Ruiz v. Kinsella,* 770 F. Supp. 2d 936, 941-42 (N.D. Ill. 2011)(citing *Twombly,* 550 U.S. at 555). In ruling on such a motion, the question is whether the facts, accepted as true, "present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

Although generally I may not rely on matters outside the pleadings in ruling on a motion to dismiss, documents that a defendant attaches to such a motion are considered part of the pleadings if they are referred to in the complaint and central to the plaintiffs' claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (internal citations omitted). This includes written contracts. *See* Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). While I must accept the allegations of Plaintiffs' complaint as true and draw all reasonable inferences in their favor, when a contract is considered in ruling on a 12(b)(6) motion, the terms of the contract control over inconsistent allegations in the complaint. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

### III.

A review of Plaintiffs' Complaint, in light of the motions to dismiss, reveals certain aspects that require repleading of the Complaint.

## A. Breach of Contract Claim

First, Plaintiffs allege that L.A. Fitness acquired their contracts, but also allege that Bally's failure to update its records resulted in their memberships not being transferred to L.A. Fitness. (Pls.' Compl. ¶¶ 5, 44.) Either L.A. Fitness acquired the contracts and was required to honor them, or Bally, perhaps wrongfully, did not assign the contracts to L.A. Fitness. Both cannot simultaneously be true. Plaintiffs may of course plead in the alternative, but they must use a formulation that indicates this is the course of action they are pursuing. *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1282 at 525 (2d ed. 1990) (generally an alternative claim is drafted in the form of "either-or" and a hypothetical claim is in the form of "if-then")). Plaintiffs have not done so, but rather have instead brought one breach of contract claim against both Defendants in one confusingly pleaded count.

Additionally, Plaintiffs' responses to the motions to dismiss reveal other problems with the Complaint. For example, L.A. Fitness' motion to dismiss includes a copy of the APA, which it contends conclusively shows that it did not acquire Plaintiffs' contracts.

Several provisions of the APA are relevant to the resolution of this dispute. First, § 2.1(c)(ii) of the APA, describing

13

those contracts assigned to L.A. Fitness, provides that "Sellers
shall retain (and not sell, assign, transfer or convey to Buyer)
their rights and interests under (x) any membership, personal
training or other Contract that is free, complimentary, bartered
or lifetime . . . ." The APA further provides, in § 2.3, that
L.A. Fitness shall not assume liability for "any free,
complimentary, lifetime, or bartered Customer Agreement." In §
2.4(d), the APA provides that L.A. Fitness is not liable on any
contracts it did not assume. The APA also contains a definition
of the term "Acquired Members" that restricts the transferred
memberships to those that originated at or near one of the clubs
purchased by L.A. Fitness, or whose memberships, as of the
closing date of the transaction, Bally assigned to one of the
clubs purchased by L.A. Fitness. APA, § 1.

Throughout their complaint, Plaintiffs refer to the
contracts held by Stapleton and Grabianski as "lifetime
contracts." (*See* Compl., ¶¶ 1, 2, 6, 10, 11, 38, 45.) L.A.
Fitness contends that the APA unambiguously excluded lifetime
contracts from the acquisition, and that to the extent it agreed
to honor certain lifetime contracts, it did so only for business
reasons, and not because it was obligated by contract.

Plaintiffs contend that the term "lifetime" in the APA is
ambiguous, and that to interpret it as excluding Grabianski's and
Stapleton's contracts from the asset transfer would contradict

14

L.A. Fitness's public statements about the transfer of lifetime contracts. Plaintiffs contend that discovery and parol evidence will be needed to ascertain L.A. Fitness' obligations under the contract.

Plaintiffs also contend that "lifetime contracts" was used throughout the complaint as "a term of convenience." Pls.' Resp., 5. In fact, Plaintiffs argue, Plaintiffs had "Premier Plus" memberships. Plaintiffs attach to their response Stapleton's contract, which provides the following description of that membership:

> Premier Plus – Provides Member with use of all local and nationwide Bally Total Fitness$^{SM}$ clubs (excluding all Vertical Club locations and the Executive Club in Bloomfield Hills, Michigan, memberships for which must be purchased at those clubs). Other clubs may be built or acquired after your Date of Contract which may be excluded from this membership at Seller's sole discretion. When and where available, [sic] also provides unlimited free racquetball, nursery services for a fee, the privilege to transfer membership once and a 5 day priority reservation privilege. The privilege to transfer the membership is allowed only after the membership fee has been paid in full, provided Member is in good standing and pays a transfer fee of $100.

(Dkt. No. 64-1, Ex. ¶ 20.)[2] Grabianski's Premier Plus membership contract was substantially similar to Stapleton's, according to Plaintiffs.

First, I cannot find the term "lifetime" in the APA to be ambiguous. Under Illinois law, undefined contract terms must be given their "plain, ordinary and popular meaning." *See Valley Forge Ins. Co. v. Swiderski Elec., Inc.*, 860 N.E.2d 307, 316 (Ill. 2006).[3] Lifetime means "the duration of the existence of a living being or a thing." Webster's Ninth New Collegiate Dictionary 690 (1991). Further, if a written contract is unambiguous, "then the scope of the parties' obligations must be determined from the contractual language without reference to extrinsic evidence." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 372 (7th Cir. 2009) (citing *Air Safety, Inc. v. Teachers Realty Corp.*,

---

[2] Plaintiffs did not attach their contracts to their complaint, but attached Stapleton's in response to L.A. Fitness' motion to dismiss. I will consider this, as the contracts are central to Plaintiff's claims. However, Plaintiffs also attached a declaration from their counsel, Eric Lechtzin, in which Lechtzin states that after Stapleton filed suit, L.A. Fitness agreed to assume his and his wife's memberships. (Dkt. No. 64.) This declaration is outside the pleadings and is not an appropriate matter for consideration on a motion to dismiss.

[3] The APA has an express choice of law provision that provides that it is governed by Delaware law, § 12.9. L.A. Fitness suggests that Delaware law might apply, but acquiesces to the application of Illinois law, at least at this stage of the case, so I will apply the law of Illinois. *See Wehrs v. Benson York Group, Inc.*, No. 07 C 3312, 2008 WL 753916, at *2 (N.D. Ill. March 18, 2008) (internal citations omitted).

706 N.E.2d 882, 884 (1999)); *see TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007) (holding that when a contract is facially unambiguous and contains an integration clause, the consideration of extrinsic evidence is barred). The APA contains an integration clause, § 12.4, and the fact that the term lifetime is undefined is not enough to make the definition of "Assumed Contract" in § 2.1(c)(ii) of the APA "reasonably or fairly susceptible to more than one interpretation." *In re Lakewood Eng'g & Mfg. Co., Inc.*, 459 B.R. 306, 329 (Bankr. N.D. Ill. 2011). So if the contracts at issue are truly "lifetime" contracts, then L.A. Fitness is correct that it was not required to assume them and that its conduct in telling members that it would not honor the contracts was not deceptive or wrongful.

However, while the parties focus most of their energies on the issue of whether the term "lifetime" in the APA is ambiguous, it appears that the real issue is whether Plaintiffs' contracts should properly be considered lifetime contracts. The word "lifetime" appears nowhere in Stapleton's contract. (*See* Dkt. No. 64, Ex. A.) The form contract is largely blank, but has "$25 per year," written in the "Membership Price" box. At the bottom of the last page of the contract is a handwritten note: "Per telephone conversation with Rhonda Quigley on 10/20/95 the membership dates back to 1983 and the dues will remain at $25 per year." The contract is not measured by Stapleton's life, nor does it specify any duration, as

17

it appears to be a form contract used solely as a vehicle to transfer the Premier Plus contract from the previous owners to the Stapletons.

I note that in arguing that this is a lifetime contract, L.A. Fitness points to Paragraph 21 of Stapleton's contract, which L.A. Fitness contends provides that the contract is renewable as long as the member is in good standing and membership fees are paid in full. In fact, this paragraph refers to "Monthly Dues," providing that they may be paid in advance for a full year as annual dues. This paragraph does not address the duration of the contract or describe it as a lifetime contract. Additionally, I note that the original contract Stapleton and his wife purchased from former Bally members also did not use the word "lifetime" to measure its duration. Rather, it was a three-year membership, renewable annually for a fee of $25.

L.A. Fitness urges me to consider Plaintiffs' repeated use of the term "lifetime" to describe their contract in their Complaint to be judicial admissions that the contracts at issue are "lifetime" contracts. *See Murey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court."). It appears, however, that Plaintiffs have retreated from the position that these are lifetime contracts. If it is Plaintiffs' contention that their Premier Plus contracts are

18

not lifetime contracts, and that L.A. Fitness was obligated to honor them, they should replead their claim against L.A. Fitness to make this plain. Although allegations in pleadings can be judicial admissions, at this early stage of the case, it would be improper to hold Plaintiffs to their characterization of the contracts without allowing them an opportunity to amend. *See, e.g., Dewan v. Universal Granite and Marble, Inc.*, No. 08 C 350, 2009 WL 590499, at * 3 (N.D. Ill. March 6, 2009)(noting that when a party has amended its pleading, earlier allegations are not considered judicial admissions); *Morlock v. Shepherd*, 99 C 0637, 1999 WL 1212197, at *5 (N.D. Ill. Dec. 16, 1999) (allowing plaintiff to replead despite damaging concession in original pleading because it was possible she could state a claim).

L.A. Fitness additionally argues that Plaintiffs cannot be considered "Acquired Members" under the APA because their memberships did not originate at the acquired clubs, nor were they assigned to those clubs at the time of the asset purchase. L.A. Fitness points to Plaintiffs' allegations that it was Bally, not L.A. Fitness, that failed to update its records to reflect their current home gym. (*See* Compl., ¶¶ 5, 44.) While this is true, Plaintiffs also allege that they did in fact complete transfer paperwork with Bally that reflected their current residences. (Compl. ¶¶ 38, 47.) If this is true, then it

possible that Plaintiffs were in fact "assigned" to the clubs that L.A. Fitness acquired.

Plaintiffs' breach of contract claim against Bally is similarly problematic. At the time Bally filed its motion, Plaintiff had not yet submitted Stapleton's contract, which it did in response to L.A. Fitness' motion to dismiss. Contrary to Bally's argument, Plaintiffs were not required to attach copies of the contracts to their complaint or allege the terms of the contracts verbatim in order to state a claim for breach of contract. *See Jiang v. Allstate Ins. Co.*, 199 F.R.D. 267, 272 (N.D. Ill. 2001). Nonetheless, as noted above, Plaintiffs' pleading of its breach of contract claim is muddled. In regard to Bally, Plaintiff does not specify what contract terms Bally breached when it allegedly failed to assign Plaintiffs' contracts to L.A. Fitness, or when it imposed the so-called "home club restriction." They apparently believe that Bally was required to assign their contracts, but do not allege a contractual basis requiring assignment. Although the federal rules provide for liberal pleading, "claimants must state enough direct or inferential allegations to establish the necessary elements under the selected theory of recovery to survive a 12(b)(6) motion." *Letisha A. v. Morgan,* 855 F.Supp. 943, 947 (N.D. Ill. 1994); *see Zaro Licensing, Inc. v. Cinmar*, Inc. 779 F. Supp. 276, 286 (S.D.N.Y. 1991) (holding that a pleading must "at a minimum

20

allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion."). I note that Plaintiffs have asserted a violation of the implied covenant of good faith and fair dealing, but this, as Plaintiffs acknowledge, is not an independent source of contractual duties. *See Hardaway v. CIT Grp./Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 686 (N.D. Ill. 2011) (citing *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994)). Rather, the implied covenant guides the interpretation of contractual provisions, and requires a party afforded discretion by a contractual provision to exercise it "in a manner consistent with the reasonable expectations of the parties." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1445 (7th Cir. 1992). While Plaintiffs need not plead the contract terms verbatim, they should make plain what contractual obligations Bally is alleged to have breached.[4]

_____

[4] I note that Bally also contends that it cannot be liable for breach of contract because of Plaintiffs' allegation that Bally assigned the contracts to L.A. Fitness. Bally cites no support for this contention, however, and it appears not to be well-taken. While Bally may have assigned its rights and delegated its responsibilities under the contracts to L.A. Fitness, the effect of that assignment would ordinarily make both parties liable on the contracts. *Gen. Elec. Railcar Leasing Servs. Corp. v. Carlson Mktg. Grp., Inc.*, No. 91 C 5345, 1992 WL 14175, at *3 (N.D. Ill. Jan. 16, 1992); *see Strauss v. Stratojac Corp.*, 810 F.2d 679, 684 n.4 (7th Cir. 1987) (holding that it is "well-settled" that "an assignor of a contract remains liable on the contract after the assignment."). Thus, if L.A. Fitness acquired Plaintiffs' contracts, and failed to honor them, Bally could be liable for that breach.

21

**B. ICFA Claim**

Plaintiffs' ICFA claim is similarly infirm.  The ICFA provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 ILCS 505/2).  To state a claim under this statute, a plaintiff must allege the following: (1) a deceptive act or unfair practice; (2) intent on defendant's part that plaintiff rely on the deception or unfair practice; and (3) that deception occurred in the course of conduct involving trade or commerce. *Wendorf v. Landers*, 755 F. Supp. 2d 972, 978-79 (N.D. Ill. 2010) (internal citations omitted).

Defendants argue this is nothing more than a breach of contract claim clothed in the language of fraud.  A breach of contract standing alone, "'does not amount to a cause of action cognizable under [the ICFA]'" and the ICFA does not apply to simple breach of contract claims. *Sindles v. Saxon Mortg. Services, Inc.*, 2012 WL 1899401, at *4 (N.D. Ill. May 22,2012)(citing *Am. Airlines, Inc., v. Wolens,* 513 U.S. 219, 233 (1995).  This is true even if a "widespread" or "systematic" breach of contract is alleged. *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011).

However, even if Plaintiffs can meet the requirement of showing more than a widespread breach of contract, Plaintiffs

22

ICFA claim suffers from the same defect as their breach of contract claim in that it both alleges that Bally failed to transfer the contracts to L.A. Fitness and that L.A. Fitness engaged in deceptive conduct in failing to honor the contracts. These theories appear mutually inconsistent, yet, as noted above, Plaintiffs have not pleaded them in the alternative, but have rolled them into one count against both Defendants. Although Defendants raise other issues in their motions, it appears that the best course of conduct is to allow Plaintiffs to replead their complaint to clarify their theory of the case before going further.

IV.

For the reasons stated herein, L.A. Fitness' motion to dismiss (Dkt. No. 49) is granted, as is Bally's motion to dismiss (Dkt. No. 30). Plaintiffs are given 30 days from the date of this order to address the deficiences in their complaint noted herein.

**ENTER ORDER:**

_Elaine E. Bucklo_
_____
**Elaine E. Bucklo**
United States District Judge

Dated: Sept. 11, 2012