**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER GRABIANSKI et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>BALLY TOTAL FITNESS HOLDING )<br>CORP. et al., )<br>)<br>Defendants. ) | No. 1:12-cv-284<br><br>Honorable Elaine E. Bucklo |

**DEFENDANT, BALLY TOTAL FITNESS HOLDING CORP.'S,
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**REDACTED COPY**

**I.      INTRODUCTION**

Plaintiffs' amended complaint fails to cure the defects identified by this Court in its September 11, 2012 Order ("Order"). That Order granted leave to amend on limited terms, ordering that "Plaintiffs are given until 10/11/2012 to address the deficiencies in their complaint noted herein." (Order, at 23.) Instead of curing those defects, Plaintiffs have added five "new" named plaintiffs to this lawsuit (Fridman, Raecek, Dromgoole, Kehati, and Esposito), and now allege contract and consumer fraud claims under the laws of Arizona, Florida, New Jersey and New York.[1]

This addition of these "new" named plaintiffs (and vast expansion of the case) is inconsistent with the limited leave granted to plaintiffs by this Court "to address the deficiencies in their complaint noted herein," (Order, at 23), and is precluded by United States District Judge Otis D. Wright, II's order in *Fridman et al. v. Bally Total Fitness Holding Corp. et al.*, No. 2:12-cv-707-ODW(MRWx) (C.D. Cal.). Judge Wright dismissed the case filed in the Central District of California by these same five plaintiffs.[2] These plaintiffs failed to appeal the *Fridman* Order by the October 25, 2012 deadline, at which time the order became final. Instead of appealing, these plaintiffs re-filed their claims in this Court. Settled doctrines of claim preclusion bar this re-filing. *See Am. Nat'l Bank & Trust Co. of Chi. et al. v. Equitable Life Assurance Soc. of U.S.*, 406 F.3d 867, 874-75 (7th Cir. 2005) (dismissals for want of jurisdiction are preclusive against re-filing).

---

[1] The original complaint was limited to contract claims and claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

[2] Bally requests that this Court take judicial notice of the *Fridman* complaint and the order dismissing it (hereinafter the "*Fridman* Order"). (Def.'s Req. for Judicial Notice, Ex. A, B.) *See, e.g.*, *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997) (courts can take judicial notice of the contents of other courts' records). A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. *Id.*; *Doherty v. City of Chi.*, 75 F.3d 318, 324 n. 4 (7th Cir. 1996); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

The claims of the original plaintiffs, Grabianski and Stapleton ("Plaintiffs"), fare no better because they have not remedied the deficiencies in their claims as identified by this Court. Specifically, this Court pointed out that Plaintiffs had failed to "specify what contract terms Bally breached when it allegedly failed to assign Plaintiffs' contracts to LA Fitness, or when it imposed the so-called 'home club restriction.'" (Order, at 20 (citations omitted).) They still have not done so.

Plaintiffs now allege that Bally failed to assign their contracts to LA Fitness and remains liable for not providing a club near their homes. But this theory fails because, among other reasons, their contracts expressly provide that Bally has the right "to close any facility . . . and/or modify any program, activity, class or service in our sole discretion." (*See, e.g.*, Corrected Ex. A. to Am. Compl., § 9.) Alternatively, Plaintiffs allege that Bally assigned their contracts to LA Fitness and that Bally is liable for LA Fitness' subsequent breach of contract. But Plaintiffs do not allege with any proper basis how LA Fitness subsequently breached their contracts. It is not a breach of contract to close a club or to relocate a club. To the contrary, Plaintiffs' contracts specifically contemplates such closures and provide Plaintiffs with a remedy:

> You may cancel this Contract if your club of enrollment permanently closes and you live more than 25 miles from any other club which you are entitled to use under the membership plan you have chosen or any substantially similar facility which will honor your membership at no additional charge.

(*Id.*, § 8.)

> **MONTHLY DUES (cont.):** Monthly dues charges will continue to be due each month regardless of your use of the club until you notify us in writing that you wish to cancel this Contract.

(*Id.*, § 21.)

Nothing in contracts alleged by Plaintiffs creates the right that they assert, namely the right to have a club near their home in perpetuity. Their remedy, in the event of a closure or relocation of a club (or for any other reason or no reason at all), is to cancel their contract and thereby stop paying any money. Moreover, to the extent that Plaintiffs are claiming, without a contractual basis, such a right in perpetuity, their claims fail as a matter of law because contracts of indefinite duration are terminable at will. *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1998) (a contract that offers the possibility of perpetual duration is terminable at will). If, as Plaintiffs allege, Bally "effectively terminated" their memberships, (Am. Compl., ¶ 51-52), then Bally was within its rights as established by the Supreme Court of Illinois.

Finally, Plaintiffs' attempt to state claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") fails miserably. Quite simply, they do not and cannot allege the essential elements of an ICFA claim. Additionally, Plaintiffs' ICFA claim is barred by an order entered September 1, 2009 by the United States Bankruptcy Court for the Southern District of New York.

## II. ARGUMENT

### A. Pleading Standards

This Court is well-familiar with the pleading standards under the Federal Rules of Civil Procedure. Rule 8(a) requires, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In alleging fraud, Rule 9(b) requires a statement with particularity of the circumstances constituting the fraud. *See* Fed. R. Civ. P. 9(b). Rule 12(b) requires the dismissal of complaints that fail to state claims upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

As the Supreme Court instructs, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

3

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting *Lang v. TCF Nat'l Bank*, 249 Fed. Appx. 464, 466 (7th Cir. 2007)). Plaintiffs' claims do not pass muster under this standard.

### B. The *Fridman* Plaintiffs Cannot Re-file Their Claims In This Court.

In their 49-page amended complaint, Plaintiffs add five "new" named plaintiffs to the lawsuit, and they now bring contract and consumer fraud claims under the laws of Arizona, Florida, New Jersey, and New York. The addition of these "new" named plaintiffs is a vast expansion of this case, as is evidenced by the 216 paragraphs of charging allegations. This Court granted the existing Plaintiffs leave "to address the deficiencies in their complaint noted herein." (Order, at 23.) It did not grant Plaintiffs leave to add additional named plaintiffs to this lawsuit. Moreover, the addition of these five plaintiffs is precluded by the order of United States District Judge Otis D. Wright, II in *Fridman et al. v. Bally Total Fitness Holding Corp. et al.*, No. 2:12-cv-707-ODW(MRWx) (C.D. Cal.).

The *Fridman* Order dismissed the identical claims of the same plaintiffs for lack of subject matter jurisdiction.[3] (*Fridman* Order, p. 4.) That order became final on October 25, 2012 when Plaintiffs failed to file a timely notice of appeal. Judge Wright dismissed the *entire case* for lack of subject matter jurisdiction. (*Fridman* Order, p. 4 ("Therefore, *this case* is hereby dismissed without prejudice for lack of subject-matter jurisdiction.") (emphasis added)). The dismissal of the entire action ends the litigation and permits appeal. *Am. Nat'l Bank & Trust Co.*

---

[3] There are no means by which the attorneys for the *Grabianski* Plaintiffs were unaware of the *Fridman* Order. The attorneys of record in *Grabianski* are among the attorneys of record in *Fridman*.

4

*of Chi. et al. v. Equitable Life Assurance Soc. of U.S.*, 406 F.3d 867, 874-75 (7th Cir. 2005) ("[U]nlike the dismissal of a complaint, which can ordinarily be amended, the 'dismissal of the entire action ends the litigation' and therefore, permits an appeal under § 1291."). This is true even though Judge Wright's dismissal order was "without prejudice." *See, e.g.*, *Hill v. Potter*, 352 F.3d 1142, 1146-47 n.6 (7th Cir. 2003). Indeed, the Seventh Circuit has expressly recognized that:

> Dismissals for want of subject-matter jurisdiction are always denominated without prejudice, because they signify that the court did not have the power to decide the case on the merits. But they are preclusive with respect to the jurisdictional ruling, . . . as otherwise the plaintiff would be free to refile the identical case in the same court.

*Id.* (internal citations omitted); *see also Am. Nat'l Bank*, 406 F.3d at 875 ("The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . The test is whether the district court has finished with the case.").

If the *Fridman* plaintiffs were dissatisfied with Judge Wright's order, the only proper course was to file an appeal. They have no legal right to re-file the dismissed claims in this Court. *Hill*, 352 F.3d at 1146-47 n.6. Thus, the claims of the five "new" *Fridman* plaintiffs (Fridman, Raecek, Dromgoole, Kehati, and Esposito) must be dismissed. Bally, therefore, will limit the remainder of this motion to the claims of Grabianski and Stapleton.

### C. Plaintiffs Fail To State A Claim For Breach Of Contract Against Bally (Count I).

This Court directed Plaintiffs to correct, if possible, certain pleading deficiencies in their initial complaint:

> In regard to Bally, Plaintiff does not specify what contract terms Bally breached when it allegedly failed to assign Plaintiffs' contracts to L.A. Fitness, or when it imposed the so-called "home club restriction." They apparently believe that

5

>Bally was required to assign their contracts, but do not allege a contractual basis regarding assignment. Although the federal rules provide for liberal pleading, "claimants must state enough direct or inferential allegations to establish the necessary elements under the selected theory of recovery to survive a 12(b)(6) motion."

(Order, at 20 (citations omitted). Plaintiffs have not complied with this Court's direction.

In their amended complaint, Plaintiffs alleged that they entered into "Premier" or "Premier Plus" memberships. (Am. Compl., ¶ 1.) ███████████████████ ███████████████████████████████████ Plaintiffs attach to the amended complaint a copy of the Stapletons' "Premier Plus" membership contract, (*id.*, ¶ 68.), which is unsigned and contains handwritten modifications. (Corrected Ex. A. to Am. Compl., p. 1-4.) According to Plaintiffs, the agreements contained "standardized terms." (*Id.*, ¶ 32). The gravamen of Plaintiffs' amended complaint is that Bally breached Plaintiffs' "Premier Plus" membership contract by closing clubs, thereby not providing clubs convenient to them.

The closure of clubs plainly is not a breach under Plaintiffs' contract. To the contrary, the contract expressly permits Bally to close its facilities at any time:

> **9. RESERVATION OF RIGHTS.** We reserve the right at any time to close any of our facilities or alter the hours of operation, and the right to amend the cost of, add, modify and/or eliminate any program, activity, class or service in our sole discretion . . .

Moreover, to the extent that Plaintiffs rely on some alleged promise outside the contract, their reliance is mistaken because of the integration clause in the contract:

> **15. EXCLUSIVE AGREEMENT.** This Contract constitutes the entire and exclusive agreement between the parties and cancels and supersedes all prior promises, representations, understandings and/or agreements relating to the membership purchase. This Contract may be modified only be an instrument in writing . . . No change to any printed term in this Contract shall be valid.

An integration clause, such as the one cited above, "is a clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 465 (Ill. 1999).

Pleading in the alternative, Plaintiffs also allege that Bally breached their contracts by failing to assign their memberships to LA Fitness clubs near the members' current residences. (Am. Compl., ¶ 11, 12(a).) A review of their contracts reveals that they have no such right to insist on assignment of their members to clubs near their current residences. Apparently recognizing this problem, Plaintiffs rely on purported rights that they say arise outside their contracts: (1) ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ (*id.*, ¶ 141), or (2) Bally represented to its members on a website[4] that "they would be able to transfer their home clubs if they relocated after purchasing their memberships." (*Id.*, ¶ 34.).

Once again, the integration clause in Plaintiffs' contracts prevents Plaintiffs from relying on alleged promises made outside their contracts. *Air Safety*, 185 Ill.2d at 465. ███████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████



---

[4] The website statements attributed to Bally are inapposite because they refer to "One Club Access" and "Local Access" memberships, and not Plaintiffs' "Premier" and "Premier Plus" memberships. (Am. Compl., ¶ 34.). And, as discussed above, these statements do not modify Plaintiffs' contracts.

In sum, despite prolix amended allegations, Plaintiffs still have not corrected the deficiencies identified by the court. (Order, at 20.) Nothing in the membership contract (which is "the entire and exclusive agreement between the parties") prohibits Bally from closing clubs or from failing to assign memberships to other clubs close to Plaintiffs' homes. To the contrary, the membership contracts expressly acknowledge Bally's rights to close any of its facilities at its sole discretion and do not impose upon Bally any requirement to assign membership agreements to other clubs that may be convenient to a member. (Corrected Ex. A. to Am. Compl., § 9 ("We reserve the right at any time to close any of our facilities or alter the hours of operation.").) If Plaintiffs are unhappy with the closure of a club or the assignment of their membership contract, their agreed contractual remedy is that they are relieved of their obligation to pay additional dues. (*Id.*, § 7.) ("Monthly dues charges will continue to be due each month regardless of your use of the club until you notify us in writing that you wish to cancel this Contract.") (*Id.*, §21). Their remedy does not include a national federal class action that depends on strained legal theories that find no basis in their contracts.

D. **Plaintiffs' Vicarious Breach Of Contract Liability Theory Is Defective.**

Implicitly recognizing that Bally did not breach any of its contractual obligations, Plaintiffs attempt to allege vicarious liability on Bally for LA Fitness's alleged breach. Although difficult to discern, Plaintiffs' strained theory appears to be that: a) Bally assigned the memberships to LA Fitness; b) LA Fitness imposed some sort of "home club" restriction and then refused to honor Plaintiffs' contracts; and c) Bally, as the assignor of the contracts to LA Fitness, is vicariously liable for LA Fitness' conduct. (Am. Compl., ¶ 13, 15, 41, 59.) As a result of these alleged events, Plaintiffs allege that Bally "effectively terminated" their memberships. (*Id.*, ¶ 51-52.)

8

These allegations do not state claims upon which relief can be granted against Bally in favor of Plaintiffs. In this motion, Bally does not argue that by assigning contracts to LA Fitness it has relieved itself of liability through a novation. *Gen. Elec. Railcar Leasing Servs. Corp. v. Carlson Mktg. Grp., Inc.*, No. 91-c-5345, 1992 WL 14175, at *3 (N.D. Ill. Jan. 16, 1992); *Strauss v. Stratojac Corp.*, 810 F.2d 679, 684 n.4 (7th Cir. 1987). Bally, however, is not relieving itself of any liability to indefinitely provide club access near Plaintiffs' homes (wherever they may be at any time in the future). As discussed above, Bally never had any such liability. The assignment to LA Fitness, therefore, neither created nor extinguished any such liability.

Assuming for purposes of this motion that the Bally contracts with Plaintiffs created an obligation of indefinite duration to provide club access wherever and whenever Plaintiffs may reside, as Plaintiffs posit, this claim also fails. Under Illinois law, "contracts of indefinite duration are terminable at will." *See, e.g.*, *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1017 (Ill. 1998). "[C]ontracts are more likely to be found terminable at will when the duration clause gives one party the opportunity to terminate, because it is 'reasonable for the court to conclude that if one of the parties could institute a termination-triggering event, then the contract should be considered terminable at will.'" *Riverside Mktg., LLC v. Signaturecard, Inc.*, 425 F.Supp.2d 523, 531 (S.D.N.Y. 2006) (applying Illinois law) (citing *Yale Sec., Inc. v. Freedman Sales, Ltd.*, No. 96-cv-6501, 1997 WL 51428, at *3 (N.D. Ill. Feb. 3, 1997)); *Experience Based Learning, Inc. v. Just Live, Inc.*, No. 09-c-50018, 2011 WL 4396922, at *3 (N.D. Ill. Sept. 21, 2011) ("Because [one party] has the power to terminate the contract in its discretion at any time, and because it could not be determined when it would exercise that

9

discretion, the duration of the contract in this case is indefinite, and therefore, terminable at will.").

According to Plaintiffs, they had "long-term membership contracts," (Am. Comp., ¶ 30, 32), that could be used "for years, if not decades to come." (*Id.*, ¶ 147.) Moreover, according to Plaintiffs, they can terminate at will. (Corrected Ex. A to Am. Compl., p. 3-4, §§ 3-8, 21.) Finally, according to Plaintiffs, Bally "effectively terminated" their memberships. (Am. Compl., ¶ 51-52). Assuming these allegations to be true, as we must under Federal Rule of Civil Procedure 12(b)(6), Bally did nothing wrong because the memberships are terminable at the will of either party. *See, e.g.*, *Riverside Mktg.*, 425 F. Supp. 2d at 531; *Jespersen*, 700 N.E.2d at 1017 ("Both parties here enjoyed the right to terminate the agreement at will, which means they could terminate the agreement for any or no reason without committing a breach of contract."). Bally cannot be vicariously liable under terminable at will contracts.

### E.   Plaintiffs' ICFA Claim (Count V) Must Be Dismissed.

The ICFA provides a remedy for "'unfair methods of competition and unfair or deceptive acts or practices' in specified commercial transactions." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (citing 815 ILCS 505/2). To state a cause of action under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deception." (Order, at 20); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

Allegations of deceptive conduct brought under the ICFA must be pled with enough particularity to satisfy Rule 9(b). Fed. R. Civ. P. 9(b); *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F.Supp.2d 978, 1003-04 (N.D. Ill. 2010); *DeLeon v. Beneficial Constr. Co.*, 55

F.Supp.2d 819, 825 (N.D. Ill. 1999) (stating that claims under the ICFA brought in federal court must comply with Rule 9(b)). Rule 9(b)'s heightened pleading standard "requires the plaintiff to state 'with particularity' any 'circumstances constituting fraud.'" *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). It demands a plaintiff plead "[t]he who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* at 627; *see also Miller v. Showcase Homes, Inc.*, No. 98-C-2009, 1999 WL 199605, at *2 (N.D. Ill. Mar. 31, 1999) (under Rule 9(b), a plaintiff must state "the identity of the person making the representation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated").

The amended complaint's allegations do not meet this standard. Plaintiffs merely allege conclusions. (Am. Compl., ¶ 185-86.) Totally lacking are any allegations of fact that support these conclusions. For example, Plaintiffs fail to allege facts that, if proven at trial, would show that Bally intentionally made false statements or material omissions that induced these Plaintiffs to enter into Bally memberships. *See, e.g.*, *O'Brien v. Landers*, No. 1:10-cv-02765, 2011 WL 221865, at *4-5 (N.D. Ill. Jan 24, 2011). It is fundamental to an ICFA claim that the plaintiff allege that "[a] defendant planned *in advance* not to honor the representations it made in the contract or that it would not have been possible or feasible to do so." *Hausen v. PS Ill. Trust*, 2012 WL 266169, at *6 (N.D. Ill 2012) (emphasis added) (quoting *Gabler v. Minnesota Mut. Life Ins. Co.*, 1993 WL 126286, at *2 (N.D. Ill. 1993)). An ICFA claimant "state[s] a valid claim of consumer fraud *only* where premised upon statements made *prior to* their dates of purchase." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 594 (Ill. 1996) (emphasis added); *see also Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 12-13 (Ill. App. Ct. 2001).

Here, Plaintiffs do not allege that Bally planned in advance of entering into membership contracts with other parties that, in November 2011, it would sell many of its clubs to LA Fitness and thereafter not honor any contractual obligations it assertedly had under membership contracts. *See, e.g.*, *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1036 (Ill. App. Ct. 1990) (dismissing the ICFA claim because Plaintiffs failed to allege facts supporting a finding of preplanning by defendant). Moreover, as for Stapleton and Grabianski, it is completely implausible that Bally could have formed such an intention to trick Stapleton and Grabianski because they allege that these Plaintiffs purchased their contracts on the secondary market from other members, not from Bally. (Am. Compl., ¶¶ 68, 76.)

At bottom, it is apparent that Plaintiffs have attempted to recast their breach of contract claims as ICFA violations. But "[a] breach of contract standing alone, 'does not amount to a cause of action cognizable under [the ICFA]' and the ICFA does not apply to simple breach of contract claims." (Order, at 22 (citing *Sindles v. Saxon Mortg. Servs., Inc.*, 2012 WL 1899401, at *4 (N.D. Ill. May 22, 2012) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995)). Claims averring fraud must be something more than reformulations of allegations of contractual breach. *Avery*, 835 N.E.2d at 844. "When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Sindles* at *4 (emphasis added). A deceptive act "involves more than the mere fact that a defendant promised something and then failed to do it." *Id.* (citing *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 992-93 (Ill. App. Ct. 2000)). "[I]t is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Id.* No ICFA claim exists even if "widespread" or "systematic" breach of contract is alleged. *Greenberger*, 631 F.3d at

12

400. "What plaintiff calls 'consumer fraud' or 'deception' is simply defendants' failure to fulfill their contractual obligations." *Avery*, 835 N.E.2d at 844.

### F. The ICFA Claim Is Barred By An Order Confirming A Plan Of Reorganization Of The United States Bankruptcy Court.

Even if Plaintiffs had pled viable ICFA claims against Bally, which they have not, their claims would be barred by an order of the United States Bankruptcy Court for the Southern District of New York. Specifically, on December 3, 2008, Bally Total Fitness Holding Corporation and its subsidiaries filed a Petition for Bankruptcy under Chapter 11 of the United States Bankruptcy Code, Case No. 08-14818 (BRL). A final order confirming Second Amended Joint Plan of Organization of Debtors under Chapter 11 of the Bankruptcy Code was entered on August 19, 2009, and became effective on September 1, 2009 (the "Effective Date"). As a result of this Bankruptcy Court Order, all persons, including but not limited to Plaintiffs, who held Claims against Debtors that arose on or before the Effective Date of September 1, 2009 were "permanently enjoined" from commencing or continuing any action or other proceeding against the Debtors with respect to such Claims, and such Claims were "discharged and released." In particular, the Bankruptcy Order discharged all debts, including all contingent and unmatured claims, arising before September 1, 2009. *See* 11 U.S.C. § 1141 (d)(1)(A) (providing that a chapter 11 plan of reorganization discharges all debts arising before the date of confirmation, regardless of whether a proof of claim has been filed)[5]; *see* Def.'s Req. for Judicial Notice, Ex. C, p. 42 (specifically barring any claims arising out of conduct occurring before the Effective Date, September 1, 2009).

Plaintiffs' ICFA claims are contingent claims that are barred by the Bankruptcy Order. A claim is contingent if there is a pre-petition relationship between the claimant and the debtor that

---

[5] "Debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). "Claim" means any "right to payment, whether or not such right is . . . contingent . . . [or] unmatured." 11 U.S.C. § 101(5)(A).

13

provides sufficient contemplation of contingencies that may ultimately become payment obligations. *See, e.g.*, *In re Chateaugay Corp.*, 944 F.2d 997, 1005 (2d Cir. 1991). As long as the conduct underlying the claim occurred pre-petition, any injuries occurring after the petition are "sufficiently contingent prior to the petition date" such that they are barred. *In re Worldcom, Inc.*, 339 B.R. 836, 841 (S.D.N.Y. 2006). If a claim relates back to pre-bankruptcy wrongful conduct, even if the claim is continuing, it is dischargeable. *Id*. The relevant date is when the wrongful conduct occurred and not the date with the injury manifested itself. *In re Quigley Co., Inc.*, 383 B.R. 19, 22-27 (Bankr. S.D.N.Y. 2008) ("The claimant's status in bankruptcy does not depend on the manifestation of the injury."). If wrongful conduct occurs before the debtor's bankruptcy filing date, the damaged party holds a contingent claim in the bankruptcy. *Id.* at 27. Such a contingent claim is barred after the bankruptcy.

Here, Plaintiffs' ICFA claim is only viable if they allege that Bally planned in advance not to honor Plaintiffs' membership agreements. *Hausen*, 2012 WL 266169, at *6. Any intent or planning on Bally's part that Plaintiffs rely on Bally's allegedly deceptive acts would necessarily have had to have occurred before Plaintiffs entered into their membership agreements, *see Avery*, 835 N.E.2d at 850, in 1995 (Stapleton) and 1999 or 2000 (Grabianski). (Am. Compl., ¶ 68, 76). Because Plaintiffs allegedly purchased their memberships long before the Effective Date of September 1, 2009, such preplanning on Bally's part would necessarily have had to occur before then. Plaintiffs' ICFA claim, therefore, is barred by the Bankruptcy Order.

14

### III. CONCLUSION

For the foregoing reasons, Bally respectfully requests that this Court dismiss Plaintiffs' amended complaint with prejudice.

DATED: November 5, 2012          By:     /s/ Kimball R. Anderson
                                         Kimball R. Anderson
                                         Kathleen B. Barry
                                         Laura W. Lee
                                         WINSTON & STRAWN LLP
                                         35 West Wacker Drive
                                         Chicago, Illinois 60601
                                         (312) 558-5600
                                         kanderso@winston.com

                                         Paul J. Coady
                                         WINSTON & STRAWN LLP
                                         333 South Grand Ave.
                                         Los Angeles, California 90071-1543
                                         (213) 615-1721
                                         pcoady@winston.com

                                         *Attorneys for Defendant*
                                         *Bally Total Fitness Holding Corp.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 5th day of November, 2012, a copy of the foregoing **Defendant, Bally Total Fitness Holding Corporation's, Memorandum in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint** was electronically filed with the Clerk of the Court through the CM/ECF system which will send a notice of electronic filing to all counsel of record who are registered for ECF as of this date.

By: /s/ Kimball R. Anderson
Kimball R. Anderson
Kathleen B. Barry
Laura W. Lee
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
kanderso@winston.com

and

Paul J. Coady
WINSTON & STRAWN LLP
333 South Grand Ave.
Los Angeles, California 90071-1543
(213) 615-1721
pcoady@winston.com

*Attorneys for Defendant*
*Bally Total Fitness Holding Corp.*

CHI:2695882.1

16