**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JENNIFER GRABIANSKI, *et al.*, on behalf of themselves and all others similarly situated, | CIVIL ACTION<br><br>No. 1:12-cv-284<br><br>Honorable Elaine E. Bucklo |
| Plaintiffs, | |
| v. | |
| BALLY TOTAL FITNESS HOLDING CORPORATION, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**REDACTED**

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................................1

II.  STATEMENT OF FACTS...................................................................................................3

    A.   This Court Previously Upheld Plaintiffs' Breach of Contract Claims................................3

    B.   Plaintiffs' Memberships at Bally .......................................................................................4

    C.   The Asset Purchase Agreement ..........................................................................................5

    D.   Bally's Breach Of Plaintiffs' Membership Agreements......................................................6

    E.   Subsequent Transfers Of Bally Members to LAF...............................................................7

III. LEGAL STANDARD..........................................................................................................7

IV.  ARGUMENT.......................................................................................................................8

    A.   BALLY'S NEW "PROPER PARTY" DEFENSE, CONCOCTED TWO
        AND A HALF YEARS AFTER COMMENCEMENT OF THIS LITIGATION,
        SHOULD BE REJECTED OUTRIGHT ..........................................................................8

        1.   Bally Should Be Precluded from Raising a New Defense About Whether it is a
            Proper Party at this Stage of the Case....................................................................8

        2.   Bally Should Be Judicially Estopped from Raising Its New Proper Party
            Defense....................................................................................................................10

        3.   If Bally Is Permitted to Assert Its Proper Party Defense, Then Plaintiffs Must Be
            Afforded Discovery on This Issue or Leave to Amend Their Complaint...........11

            a.   This case is over two and a half years old, and Plaintiffs do not wish to
                delay the ultimate resolution of this case any further. ......................................11

    B.   BALLY HAS BREACHED PLAINTIFFS' MEMBERSHIP AGREEMENTS.........12

        1.   Bally's Termination of the Agreements Constitutes A Breach .............................12

        2.   The Existence Of Remaining Bally Clubs Located Hundreds Of Miles Away
            From Plaintiffs Does Not Preclude A Finding Of Breach....................................14

V.   CONCLUSION ..................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Ameritech Corporation v. Computer System Solutions, Inc.,*
188 F.R.D. 280 (N.D. Ill. 1999) ................................................................................8, 10

*Amphenol T&M Antennas Inc. v. Centurion Int'l, Inc.,*
2002 WL 24523 (N.D. Ill. Jan. 4, 2002) ...................................................................... 10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ......................................................................................................... 7

*Dale v. Indianapolis Police Department,*
919 F. Supp. 1242 (S.D. Ind. 1996) ............................................................................ 12

*Donovan v. Quade,*
830 F. Supp. 2d 460 (N.D. Ill. 2011) .......................................................................... 11

*Farmer v. Brennan,*
81 F.3d 1444 (7th Cir. 1996) ........................................................................................ 11

*Fednov Int'l Ltd. v. Cont'l Ins. Co.,*
624 F.3d 834 (7th Cir. 2010) ........................................................................................ 12

*Illinois Conf. of Teamsters and Emplrs. Welfare Fund v. Steve Gilbert Trucking,*
878 F. Supp. 140 (C.D. Ill. 1995) ................................................................................ 10

*Kortum v. Raffles Holdings, Ltd.,*
2002 WL 31455994 (N.D. Ill. Oct. 30, 2002) ............................................................ 12

*Kathrein v. City of Evanston,*
752, F.3d 680, 685 (7th Cir. 2914) ............................................................................... 13

*Mayer v. Farrel Corp.,*
1993 U.S. Dist. LEXIS 14199 (N.D. Ill. Oct. 8, 1993) ............................................. 10

*Patterson v. Dorrough,*
2012 WL 5381328 (N.D. Ill. Oct. 31, 2012) ............................................................... 10

*Payne v. Pauley,*
337 F.3d 767 (7th Cir. 2003) ........................................................................................... 7

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,*
2010 WL 3940694 (N.D. Ill. Oct. 6, 2010) ................................................................. 11

ii

*Ramada Franchise Sys. v. Royal Vale Hospitality of Cincinnati Inc.,*
    2004 WL 2966948 (N.D. Ill. Nov. 24, 2004) ................................................................. 10

*Staten v. Nissan North America, Inc.,*
    134 Fed. Appx. 963 (7th Cir. 2005) ............................................................................ 11

*Whitted v. Eve Cook County Sheriff's Office,*
    2013 WL 4840488 (N.D. Ill. Sept. 10, 2013) ............................................................. 12

*Wilson v. Career Educ. Corp.,*
    729 F.3d 665 (7th Cir. 2013) ....................................................................................... 13

**Statutes**

735 Ill. Comp. Stat. 5/13-206 (2010) ................................................................................. 12

**Other Authorities**

Fed. R. Civ. P. 8(b)(1)(A) .................................................................................................... 9

Fed. R. Civ. P. 15 ............................................................................................................ 2, 11

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 11

Fed. R. Civ. P. 56(a) ............................................................................................................ 7

Fed Rule Civ. P. 56(d) ..................................................................................................... 2, 11

Local Rule 56.1 .................................................................................................................... 9

## I.  <u>INTRODUCTION</u>

Plaintiffs submit this Memorandum in Opposition to Defendant Bally Total Fitness Holding

Corp.'s ("Bally") Motion for Summary Judgment, and in support of Plaintiffs' Cross-Motion for

Summary Judgment.  The arguments in Bally's motion should be rejected.  Not only does the

evidentiary record and applicable law make clear that summary judgment should be granted in

Plaintiffs' favor, but Bally's motion should also be denied for hiding the ball and raising arguments

and defenses for the first time after two and a half years of litigation.

For its primary argument, Bally raises a new defense for the first time in this case, asserting

that it is not a proper party in this lawsuit. (Def. Br. pp. 1-3, 9-11).[1]  **Bally waited over two and a**

**half years into this case, and five months after the close of fact discovery, to raise this**

**defense for the very first time.**  Bally did not mention this defense in its two motions to dismiss,

Answer, Affirmative Defenses, or in any of its objections or responses to discovery.  More to the

point, Bally did not raise this defense while offering testimony through its own Rule 30(b)(6)

corporate representative or through its expert's testimony or report.  In fact, rather than raise this

defense previously—in its Answer, two motions to dismiss, and discovery responses—Bally made

numerous statements to Plaintiffs and to this Court that expressly referred to Bally's membership

agreements with Plaintiffs, and to Bally's contractual rights under such agreements—*i.e.*, that it was

the contracting party. (SF ¶¶52-64).[2]

Bally's attempt to benefit from this last-minute litigation tactic is improper, and Bally should

be precluded or estopped from raising this new defense at this time, after the close of fact and

expert discovery.  Alternatively, if the Court does not preclude or estop Bally from presenting this

---

[1]  "Def. Br. p. ___" refers to Defendant's Memorandum in Support of its Motion for Summary Judgment, filed on July 28, 2014.

[2]  Citations to "SF ¶__" refer to paragraphs in **Section B** of Plaintiffs' Rule 56.1 Statement.

defense, then, under Fed. R. Civ. P. 56(d), discovery should be re-opened to allow Plaintiffs to respond to the issue, and/or to amend their Complaint pursuant to Fed. R. Civ. P. 15. Given that Bally and/or some other Bally-controlled entity is responsible for the unlawful actions here, and given that the statute of limitations has not run, an amendment can cure any "mistake" in naming the proper party.

Second, Bally argues that it has not breached the membership agreements because the contracts did not obligate Bally to assign the memberships to L.A. Fitness International, LLC ("LAF") as part of the November 2011 Asset Purchase Agreement ("APA"). (Def. Br. pp. 1-4, 11-13). Bally previously made this same argument in its prior motion to dismiss, and this Court rejected it when it upheld Plaintiffs' breach of contract claims against Bally. (SF ¶¶6, 65-67). Bally's argument here again mischaracterizes Plaintiffs' claim. Bally's breach does not lie in its failure to assign memberships, *per se;* but rather, Bally's breach lies in its termination of Plaintiffs' membership agreements, when Bally sold all of its clubs in Plaintiffs' respective states to LAF, and left Plaintiffs without access to clubs within their states and/or Designated Areas ("DAs"). (SF¶¶11-17). ████ ████████████████████████████████████████████████████████████████ ████████████, none of the contracts allowed Bally to terminate the agreements at will or upon an asset sale. In Bally's motion papers, it does not point to a single provision in a single contract–among the hundreds in its possession–that gave Bally the right to terminate the agreements at will or upon on asset sale. (SF ¶¶19-22).

Finally, Bally argues that Plaintiffs' contracts were not terminated or breached since Plaintiffs purportedly could have used the 100 clubs that Bally retained after the APA (Def. Br. pp. 1-3, 12-13), despite the fact that those clubs were located hundreds of miles away from Plaintiffs' homes. (SF ¶17). The Court should reject this argument. As the evidence shows, Bally sold all of the clubs located in the states or DAs where Plaintiffs resided. Bally did not continue to provide club services

2

to Plaintiffs, as the contracts required, where the only available clubs were hundreds of miles away from their homes. Thus, Plaintiffs' memberships were effectively terminated. (SF ¶¶11-17, 24).

For these reasons, Bally's motion should be denied. On the other hand, summary judgment should be entered in Plaintiffs' favor based on the following undisputed material facts:

1.  Plaintiffs were Bally members in good standing at the time of the APA (SF ¶¶10, 20, 26, 32, 35, 44);

2.  Because of Bally's undisclosed "home club" designations, Bally did not transfer Plaintiffs' Bally memberships to LAF pursuant to the APA (SF ¶¶11-17);

3.  Bally sold all of the Bally clubs located in Plaintiffs' respective states or DAs to LAF pursuant to the APA (SF ¶¶15-16);

4.  Upon execution of the APA, Plaintiffs had no available Bally clubs to use in their respective states or DAs (SF ¶¶15-17);

5.  The only clubs which Bally retained after the APA were located hundreds of miles away from Plaintiffs' homes (SF ¶17);

6.  Plaintiffs were denied club access for weeks or months during the period between the APA and their subsequent transfers to LAF, **which occurred after they filed this lawsuit** (SF ¶24);

7.  Bally's membership agreements did not provide Bally the contractual right to designate "home clubs" for any Bally memberships. (SF ¶13). This Court already made this finding of fact (SF ¶6); and

8.  Bally's membership agreements did not provide Bally the contractual right to terminate the memberships "at will" or upon an asset sale like the APA. (SF ¶¶19-22). This Court already made this finding of fact (SF ¶6).

These undisputed material facts compel a finding that Bally is liable for breach of contract.

## II.    STATEMENT OF FACTS

### A.    THIS COURT PREVIOUSLY UPHELD PLAINTIFFS' BREACH OF CONTRACT CLAIMS

Plaintiffs' First Amended Complaint alleges that Bally breached their membership agreements by unilaterally imposing a home club restriction on the memberships that did not exist in the contracts and by terminating their memberships upon execution of its APA with LAF in November 2011. (First Am. Compl. ¶¶47-54, 136-151). When Bally moved to dismiss the

3

Complaint, this Court denied that motion, in part, and upheld Plaintiffs' breach of contract claim against Bally. In the February 21, 2013 Opinion, this Court specifically: (i) upheld Plaintiffs' claim that Bally denied them access to clubs in violation of their contractual rights; (ii) rejected Bally's argument that the membership agreements were "terminable at will"; (iii) found that "the term 'home club' does not appear anywhere in the contracts"; (iv) rejected Bally's argument that Plaintiffs' claim fails on grounds that Bally had the right to close clubs; and (v) stated: "I agree with plaintiffs, however, that if they prevail on their claims, they may nevertheless be entitled to damages for the time they were unable to access the clubs." (SF ¶6).[3] The evidence obtained in discovery fully proves Plaintiffs' breach of contract claim as previously upheld by this Court.

### B. PLAINTIFFS' MEMBERSHIPS AT BALLY[4]

Plaintiffs paid Bally or its acquired predecessors hundreds or thousands of dollars in upfront payments for their memberships. Plaintiffs also regularly paid monthly or annual fees to Bally, and they had the right to renew their memberships for as long as they wanted by continuing to pay such fees. (SF ¶7). In exchange, the Bally Premier memberships provided Plaintiffs with access to Bally's gym facilities, and allowed them to use any Bally club in the country. The Premier Plus members were also permitted to resell their memberships. (SF ¶¶7-8).



(SF ¶¶9, 20-21).[5]

---

[3] Bally ignores the Court's February 21, 2013 Opinion, and instead, repeatedly refers to the Court's prior Opinion dated September 11, 2012 (Dkt. 75), which was issued before Plaintiffs filed their First Amended Complaint on October 11, 2012—the operative pleading in this matter. (Def. Br. pp. 3-4, 12-14).

[4] It is undisputed that Plaintiffs were Bally members. Plaintiffs purchased Bally memberships, had membership cards, used Bally clubs, and paid fees to Bally. (SF ¶¶7-8, 25-49).

[5] For example, Plaintiff Stapleton's contract allows *the customer* to cancel his membership if certain events occur: ¶5 allows cancellation within 3 days of signing; ¶6 allows cancellation if the customer dies or becomes

███████ (*Id.*).  As this Court already found, the contracts did not give Bally the right to terminate the contracts "at will" or upon an asset sale like the APA. (SF ¶6).  Plaintiffs enjoyed their memberships for years, and were current in their fees at the time of the APA.  (SF ¶10, 20, 26, 32, 35, 44).

C.     **THE ASSET PURCHASE AGREEMENT**

Pursuant to the November 2011 APA, Bally sold 171 of its 271 clubs to LAF, which included selling all Bally clubs that existed in numerous states and DAs.  (SF ¶¶11, 15).  Bally also provided LAF with pertinent information regarding which Bally members were to be assigned to LAF.  (SF ¶12).

Plaintiffs' memberships were not assigned to LAF pursuant to the APA.  Instead, their memberships were effectively terminated as a result of the undisclosed home club designations assigned to their memberships by Bally. The membership agreements did not give Bally the right to make any home club designation, nor inform members that Bally made such designations (SF ¶6; Ex. 45, p. 7—as this Court stated: "the term 'home club' does not appear anywhere in the contracts.").  Nevertheless, Bally assigned each membership to a home club that corresponded with the member's "club of origin"—*i.e.*, the club where the membership was originally purchased. Bally never updated its members' home club designations when a member moved to a new geographic region and accessed a different club, or when a Bally member sold his membership to another member located in a different geographic location (even though Bally had notice of the membership sales and changes in billing addresses—SF ¶¶25, 35, 37, 43).  In these instances, the member's home club remained the same originally-designated home club even though the member or transferee was

---

disabled; ¶7 allows the customer to cancel if he moves more than 25 miles away from any available club; and ¶8 allows the customer to cancel if his club closes and there is no other available club within 25 miles of him. ¶¶7-8 preclude cancellation if a club is within 25 miles. (SF ¶9).

using a different club in a different geographic region. (SF ¶¶13-14).[6]

Bally's home club designations caused Plaintiffs' memberships to be terminated in the APA. Specifically, under the APA, if LAF had acquired a Bally club that a member was using and/or was nearest in proximity to his residence, but did not acquire his designated home club, that member was not assigned to LAF under the APA. As a result, Plaintiffs had no remaining clubs available to them. (SF ¶14).

Indeed, in the APA, Bally sold all of its clubs to LAF located in numerous states or DAs.[7] Thus, Plaintiffs and other Bally members who resided in one of these states as of the effective date of the APA, but whose memberships were not assigned to LAF, had no other clubs to use. **As a result, their Bally memberships were effectively terminated.** (SF ¶¶14-17). The 100 clubs that Bally retained after the APA were concentrated only in a few discrete designated areas—New York, Colorado, northern California, Texas, northern New Jersey, and southern Virginia. These clubs are located hundreds of miles away from Plaintiffs' homes. (SF ¶17).

### D.     BALLY'S BREACH OF PLAINTIFFS' MEMBERSHIP AGREEMENTS

Bally's termination of Plaintiffs' memberships constitutes a breach because, **among the membership agreements that Bally produced in this case**, none of them gave Bally the right to terminate the agreements "at will," or upon an asset sale like the APA. (SF ¶¶9, 19-22).

███████████████████████████████████████████████████

█████████████████████████████████████████

---

[6] This is true even when the member filled out the required Bally membership transfer form. (SF ¶¶25, 35, 37, 43).

[7] These states include Arizona, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Minnesota, Oregon, Pennsylvania, the District of Columbia, Washington, and all of the locations in the greater Los Angeles area. In addition, Bally sold all of its clubs in southern New Jersey (Deptford, East Brunswick, Echelon, Maple Shade, and Union City), and certain clubs in New York (Copiague, Lake Grove and Levittown), Texas (Meadow Creek, and Red Bird) and Virginia (Falls Church, Landmark, Pentagon Square, and Prince William Crossing). (SF ¶15).

6

████████████████ which Plaintiffs were not.  (SF ¶¶9, 20).  In its brief, declarations, and exhibits, Bally does not point to a single provision in a single contract—among the hundreds of contracts in its possession—that provided Bally the contractual right to terminate the Bally memberships at will or upon an asset.

### E.    SUBSEQUENT TRANSFERS OF BALLY MEMBERS TO LAF

Shortly after the APA, Plaintiffs were denied access to clubs in their states or DAs.  It was only after they filed this lawsuit that Plaintiffs were later transferred to LAF.  Plaintiffs were damaged since they were denied gym access during the interim period, despite the fact that they had paid large upfront fees and annual or monthly renewal fees.  (SF ¶¶13-14, 16, 24, 25-49) (Ex. 45 p. 4 n. 2—by this Court: "I agree with plaintiffs, however, that if they prevail on their claims, they may nevertheless be entitled to damages for the time they were unable to access the clubs.")[8]

## III.    LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden to make this showing.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must construe "the record in the light most favorable to the nonmovant and avoid[ ] the temptation to decide which party's version of the facts is more likely true."  *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

---

[8]  In the Declaration of Earl Acquaviva, he admits that Plaintiffs' clubs were sold (¶9) and that Plaintiffs were not immediately transferred to LAF upon the APA, but were transferred weeks or months thereafter.  (¶13). In its brief, Bally admits that over 11,000 Bally members were denied club access for some period of time upon the APA before being transferred to LAF.  (Def. Br. p. 8, 15).

7

## IV.   ARGUMENT

### A.   BALLY'S NEW "PROPER PARTY" DEFENSE, CONCOCTED TWO AND A HALF YEARS AFTER COMMENCEMENT OF THIS LITIGATION, SHOULD BE REJECTED OUTRIGHT

Bally now raises for the very first time its primary defense that, since it is a holding company that enters into Bally membership agreements through its wholly-owned subsidiaries, it is not a proper party to this case. (Def. Br. pp. 1-3, 9-11).  This argument should be rejected.

As this Court stated: "Parties have an obligation to introduce, at the earliest stage of the litigation possible, the matters upon which they want to rely in supporting their claims or defense." *In re Ameritech Corporation v. Computer System Solutions, Inc.,* 188 F.R.D. 280, 286 (N.D. Ill. 1999).

Plaintiffs filed this lawsuit against Bally on January 13, 2012, believing it to be the proper party.[9]  If Bally had a defense or argument against Plaintiffs' position, it should have stated its position in its two motions to dismiss, Answer, or Affirmative Defenses (or, it should have informed Plaintiffs at the outset that another Bally-controlled entity was the correct party in interest).  If Bally had done so, Plaintiffs could have amended their Complaint at that time or taken discovery on the issue and then amended.  But Bally never did that.  Instead, Bally concealed this defense throughout this case, while repeatedly representing that it was the contracting party here.

### 1.   Bally Should Be Precluded from Raising a New Defense About Whether it is a Proper Party at this Stage of the Case

Bally should be precluded from raising this new proper party defense at such a late stage of the case**.  Bally waited over two and a half years into the case and almost 5 months after the close of fact discovery to raise its primary defense on summary judgment, and to ask the Court to enter judgment based on that defense, while knowing that Plaintiffs have not been**

---

[9]  Throughout its operations, Bally has acted under a generic "Bally" brand name, and has actively obscured the distinctions between itself and its Bally-owned entities. ████████████████████ ███████████████████████████████████████  The trademark "Bally Total Fitness" is owned by defendant Bally here.  Plaintiffs' membership cards ████████ ███████ also reflect this non-descript Bally Total Fitness.  (SF ¶¶50-51).

8

**afforded any discovery on this issue.** Adjudicating this issue at this time would be unfair and unjust. (SF ¶¶52-64).

As detailed in Plaintiffs' Rule 56.1 Statement, Bally did not raise this "proper party" defense in its two motions to dismiss the case filed on March 27, 2012 and November 5, 2012; in its Answer to Plaintiffs' First Amended Class Action Complaint or Affirmative Defenses filed on March 11, 2013; or at any point during fact or expert discovery. Bally did not raise this defense in any of its objections or responses to Plaintiffs' Requests for Admissions, Interrogatories, or document requests. Nor did Bally raise this defense when it offered it's testimony through its Rule 30(b)(6) corporate designee, or when it submitted its expert report. In fact, **in its Answer to the Complaint,**[10] **two motions to dismiss, discovery responses, and expert report, Bally repeatedly referred to the membership agreements between itself and Bally members, and to Bally's contractual rights under such agreements.** (SF ¶¶52-64). As just two examples among many:

- Bally's Third Affirmative Defense states that: **"Bally's actions constitute substantial compliance with the terms of the contracts"** and **"Plaintiffs previously breached their contracts with Bally before any alleged breach by Bally."**

- In Bally's responses to Plaintiffs' First Set of Interrogatories, Bally stated: "**Plaintiffs all signed contracts with Bally** that did not prohibit Bally from treating their clubs of enrollment as their Home Clubs." (Rep. 12, 13).

See SF ¶¶52-64 for numerous similar statements made by Bally on this issue.

Bally concealed its primary defense throughout the entire duration of this case, and has made numerous representations to Plaintiffs that it was the contracting party here. Its argument should be precluded. Bally cannot be permitted to spring its new "proper party" defense upon Plaintiffs and the Court, and to ask the Court to enter judgment in its favor based on such new defense, while

---

[10] In its Answer, Bally was obligated by the Federal Rules of Civil Procedure to "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A).

knowing that Plaintiffs have not been afforded any discovery on this issue.

Under similar circumstances, District Courts in Illinois have precluded a party from raising a new defense for the first time at a late stage of the case after discovery has closed, as it would require the Court to re-open discovery and would delay the case.[11]

Accordingly, this Court should find that Bally is precluded from raising its new "proper party" defense for the first time in its motion for summary judgment, after all discovery has closed.

### 2. Bally Should Be Judicially Estopped from Raising Its New Proper Party Defense

Similarly, based on its numerous representations *to this Court,* Bally should be judicially estopped from raising its new "proper party" defense. Bally has made numerous statements to this Court in its two motions to dismiss referring to Bally's contracts with Plaintiffs and to its contractual rights under those contracts (SF ¶¶62-64), and it successfully argued that the consumer fraud claim should be dismissed based on the parties' contractual relationship. (SF ¶64). Bally now attempts to avoid its prior representations and take the position that it is not a proper party in this case. By

---

[11] *See Patterson v. Dorrough,* No. 10 C 1491, 2012 WL 5381328 at **5-7 (N.D. Ill. Oct. 31, 2012) (court denied defendants' motion for summary judgment based on a new defense, finding that defendants were foreclosed from raising a new defense at this late juncture in the case after the close of discovery); *Ramada Franchise Sys. v. Royal Vale Hospitality of Cincinnati Inc.,* No. 02 C 1941, 2004 WL 2966948 at **4-8 (N.D. Ill. Nov. 24, 2004) (defendants were not allowed to file amended counterclaims or new affirmative defenses after discovery closed, as it would cause plaintiff undue prejudice if allowed); *Amphenol T&M Antennas Inc. v. Centurion Int'l, Inc.,* No . 00 C 4298, 2002 WL 24523 at **1-2 (N.D. Ill. Jan. 4, 2002) (court barred defendant from raising a new defense at trial, where it failed to raise the defense in its Answer, and where it would require the re-opening of discovery and motion practice, which would be manifestly unfair to plaintiffs); *In re Ameritech Corporation v. Computer Systems Solutions, Inc.,* 188 F.R.D. 280 (N.D. Ill. 1999) (defendant was foreclosed from amending its counterclaim after the close of discovery where the plaintiffs would be prejudiced in having to re-open discovery or in having to respond to the claim without discovery, it would delay the litigation, and defendant knew of the facts supporting the counterclaim for some time but substantially delayed in asserting it); *Illinois Conf. of Teamsters and Emplrs. Welfare Fund v. Steve Gilbert Trucking,* 878 F. Supp. 140, 143-144 (C.D. Ill. 1995) (the court refused to consider a new defense in ruling on summary judgment, holding that it was too late to raise a new defense after discovery has closed and the case is ready for trial; allowing such defense would necessarily result in re-opening discovery); *Mayer v. Farrel Corp.,* No. 91 C 14199, 1993 U.S. Dist. LEXIS 14199 at *9-11 (N.D. Ill. Oct. 8, 1993) (court denied defendants' motion to raise new defense two years after the filing of the complaint and defendants' Answer, where discovery was closed; allowing the new defense would result in unfair surprise, delay, and prejudice to plaintiff, and defendants failed to provide any reason for not raising the defense earlier).

waiting until now to raise this new argument, Bally is seeking to derive an unfair advantage over

Plaintiffs by requesting judgment based on its new defense while Plaintiffs have not been afforded

any discovery on the issue so as to properly rebut it. Estoppel is warranted here.[12]

**3.**     **If Bally Is Permitted to Assert Its Proper Party Defense, Then Plaintiffs Must Be Afforded Discovery on This Issue, or Leave to Amend Their Complaint**

**a.**     **This case is over two and a half years old, and Plaintiffs do not wish to delay the ultimate resolution of this case any further.**

In the alternative to finding that Bally is estopped or precluded from raising its new defense,

this Court should allow Plaintiffs to take discovery on this issue pursuant to Rule 56(d) so that

Plaintiffs can gather relevant evidence and present it to the Court.[13] The adjudication of this defense

in the complete absence of any discovery would be completely unfair and unjust to Plaintiffs.[14]

Depending on what the new discovery reveals, Plaintiffs may seek leave to amend their

Complaint under Fed. R. Civ. P. 15,[15] which should be granted. It is clear that Bally and/or some

Bally–controlled entity is responsible for the unlawful actions here, and there are no statute of

---

[12] *See Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* No. 09 C 5619, 2010 WL 3940694 at *6 (N.D. Ill. Oct. 6, 2010) (estoppel applies where the party's later position was "clearly inconsistent" with its earlier position; the party persuaded the court of its prior position; and the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped). *See also Donovan v. Quade,* 830 F. Supp. 2d 460, 490 (N.D. Ill. 2011) ("No precise or rigid formula guides the application of judicial estoppel").

[13] See the Declaration of Michael T. Fantini, filed pursuant to Fed. R. Civ. P. 56(d).

[14] Fed. R. Civ. P. 56(d) provides, in part: "If a non-movant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *See Staten v. Nissan N. Am., Inc.,* 134 Fed. Appx. 963, 964 (7th Cir. 2005) (rule 56 authorizes a district court to *deny or defer* ruling on a motion for summary judgment if the non-movant submits an affidavit saying why further discovery is needed to oppose the motion); *Farmer v. Brennan,* 81 F.3d 1444, 1449-1450 (7th Cir. 1996) (collecting cases where district courts abused their discretion when granting summary judgment while not allowing the opposing party an adequate opportunity for discovery).

[15] Fed. R. Civ. P. 15(a)(2) provides that a court should freely grant leave to amend a pleading. Rule 15(b)(1) allows a party to amend its pleadings at trial. And Rule 15(c)(1)(c) relates to amendments where the party to be brought in "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

11

limitations which would foreclose adding such other Bally entities to this action.[16]  Any purported

mistake in naming the parties can be cured easily through amendment, and granting a motion for

leave to amend the Complaint would clearly be warranted under the facts of this case.[17]

**B.     BALLY HAS BREACHED PLAINTIFFS' MEMBERSHIP
       AGREEMENTS**[18]

**1.     Bally's Termination of the Agreements Constitutes a Breach**

Bally's two remaining arguments are: (1) that it was not contractually obligated to assign

memberships to LAF in the event of an asset sale, and (2) Plaintiffs' memberships were not

terminated since they could have used the remaining 100 clubs which Bally retained after the APA

and which were located hundreds of miles from Plaintiffs' homes. (Def. Br. pp. 1-3, 11-15).

As to the first point, **this Court previously rejected the same argument when it upheld

Plaintiffs' breach of contract claim.**  (SF ¶6, 65-67).  Nevertheless, in its present motion, Bally

again mischaracterizes Plaintiffs' claim to be that Bally breached the contracts by failing to assign

their memberships to LAF.  (Def. Br. p. 11-15).  Bally again misses the point.  Upon execution of

the APA, Plaintiffs' membership contracts were effectively terminated because they no longer had

any available Bally clubs to use in their respective states or DAs.  (SF ¶¶13-14, 16-17).  Bally had no

contractual right to take such action (SF ¶¶19-22), without providing Plaintiffs some compensation.

---

[16] The statute of limitations for breach of written contract in Illinois is 10 years.  *See* 735 Ill. Comp. Stat. 5/13-206 (2010).

[17] *See Kortum v. Raffles Holdings, Ltd.,* No. 01 C 9236, 2002 WL 31455994 at **2-7 (N.D. Ill. Oct. 30, 2002) (where the defendant did not properly alert the plaintiff that another defendant entity was party to the contract, the Court allowed the plaintiff to amend his complaint to add such parties even though the case was ready for trial. *See also Dale v. Indianapolis Police Department,* 919 F. Supp. 1242, 1274 (S.D. Ind. 1996); *Whitted v. Eve Cook County Sheriff's Office,* No. 12 C 2461, 2013 WL 4840488 at *2 (N.D. Ill. Sept. 10, 2013).

[18] Under Illinois law, the elements of a breach of contract claim are (1) the existence of a contract (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages.  *Fednov Int'l Ltd. v. Cont'l Ins. Co.,* 624 F.3d 834, 839 (7th Cir. 2010).

12

The gist of Bally's breach does not lie in its failure to assign members to LAF. Rather, Bally's breach lies in the complete termination of their membership contracts.[19]

The Bally membership agreements  But the contracts did not grant Bally the right to terminate the contracts at will. And Plaintiffs would not have paid hundreds or thousands of dollars for membership contracts that gave Bally such a right. Under the contracts, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs were not in default here. Thus, Bally could not terminate Plaintiffs' memberships at will. (SF ¶¶9, 10, 19-22).

This Court already carefully examined the various provisions of Plaintiff Stapleton's contract relating to member's cancellation rights and limits on those rights, and previously ruled that such agreements were not terminable at will by Bally. (SF ¶6 ). The Court found that the contracts' "explicit restrictions on termination cannot be squared with Bally's proffered interpretation of the membership agreements as granting both parties the 'express, unfettered right to terminate the agreement on proper notice.'" (SF ¶6).[20] In fact, **among the 966 contracts produced by Bally in this case, none of them contain any provisions which grants Bally the right to terminate the contracts at will or upon an asset sale**. (SF ¶21).

Significantly, in its motion papers, Bally does not point to a single provision in a single contract—among the hundreds in its possession—which grants Bally the right to terminate the

---

[19]  Also, by unilaterally imposing a "home club" restriction into the membership agreements, Bally caused Plaintiffs and Bally members to not have their memberships transferred to LAF in the APA, and to have their memberships effectively terminated, all in breach of the implied covenant of good faith and fair dealing which is subsumed within Plaintiffs' breach of contract claim. *See Wilson v. Career Educ. Corp.,* 729 F.3d 665, 673-674 (7th Cir. 2013).

[20]  Because the Court made specific findings in its previous Order, under the law of the case doctrine, Bally should be precluded from taking yet another bite at the apple and re-arguing this point. *See Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014) ("a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it") (quoting *Tice v. Am. Airlines, Inc.,* 373 F.3d 851, 853 (7th Cir. 2004).

memberships at will or upon the APA.[21]

### 2. The Existence Of Remaining Bally Clubs Located Hundreds Of Miles Away From Plaintiffs Does Not Preclude A Finding Of Breach

Finally, Bally argues that Plaintiffs' contracts were not terminated or breached since Plaintiffs could have used the 100 clubs that Bally retained after the APA (Def. Br. pp. 1-3, 12-13), even though those clubs were concentrated in a few discrete geographic areas that were located hundreds of miles from Plaintiffs' homes. (SF ¶17). Bally asserts that, after the APA, "Plaintiffs were still entitled to exactly what they had bargained for—the right and ability to use Bally clubs…" (Def. Br. p. 13). But this argument is absurd. Bally is wrong when it asserts that Plaintiffs had "bargained for" the ability to only use clubs hundreds of miles away from their homes when they purchased their Bally memberships.

As the evidence shows, Bally sold **all** of its clubs located in numerous states and DAs, including in the states and DAs where Plaintiffs resided. Since Plaintiffs were denied access to the Bally clubs sold to LAF, and since there were no remaining Bally clubs in existence in their states or DAs, they had no other clubs they could reasonably use. (SF ¶¶14-16).[22]

The remaining 100 clubs that Bally retained in the APA were concentrated in New York, Colorado, northern California, Texas, northern New Jersey, and southern Virginia. (SF ¶17). Bally cannot reasonably argue that it provided Plaintiffs with club access, as required by the contracts,

---

[21] Bally re-argues that it had the contractual right to close clubs. (Def. Br. p. 14). This Court has already rejected this argument in its February 21, 2013 Memorandum Opinion when it made specific findings related to Plaintiffs' membership agreements (SF ¶6). This case is not about Bally closing a few clubs. This case involves Bally selling all of its clubs in most states to LAF and effectively terminating Plaintiffs' memberships. Most of the clubs sold to LAF were not closed; they were kept open. (SF ¶18).

[22] The fact that, after the APA, Plaintiff Fridman used a Bally club located in Texas on one occasion while visiting Texas is irrelevant to this issue. (Def. Br. p.5, Def. Ex. E p. 83).

where the only available clubs were hundreds of miles from their homes.  (SF ¶17).[23]  No reasonable

person would drive hundreds of miles to work out in a gym.  And for Bally to require Plaintiffs to

do so, in order to avoid being responsible for a breach, is outrageous.  Plaintiffs joined Bally and

paid fees so that they could use clubs in their neighborhoods.  When Bally sold all of the clubs in the

states or DAs where Plaintiffs reside, it effectively terminated their memberships.  Bally did not

provide Plaintiffs "exactly what they had bargained for," as Bally contends.  (Def. Br. p. 13).  Thus,

Bally breached Plaintiffs' agreements when it terminated their memberships upon execution of the

APA.

## V.  **CONCLUSION**

For all of the foregoing reasons, Defendant's Motion for Summary Judgment should be

denied in its entirety.  Plaintiffs' Cross-Motion for Summary Judgment should be granted.


Dated: September 2, 2014                    Respectfully submitted,


                              By:      /s/ Amy E. Keller
                                     Kenneth A. Wexler
                                     Amy E. Keller
                                     WEXLER WALLACE LLP
                                     55 West Monroe, Suite 3300
                                     Chicago, IL 60603
                                     Tel: (312) 346-2222
                                     Fax: (312) 346-0022
                                     kaw@wexlerwallace.com
                                     aek@wexlerwallace.com

---

[23]  For example, after the APA, the closest Bally club to Plaintiffs Grabianski and Stapleton, who reside in Illinois, was located in St. Louis.  The closest Bally club to Plaintiff Raecek, who resides in Florida, was located in Virginia.  The closest Bally club to Plaintiff Fridman, who resides in Arizona, was located in Colorado.

Sherrie R. Savett
Michael T. Fantini
Eric Lechtzin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA   19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ssavett@bm.net
mfantini@bm.net
elechtzin@bm.net

*Counsel for Plaintiffs and the Putative Class*

Kal6799489

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, on September 2, 2014.


/s/ Amy E. Keller
Amy E. Keller