IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Jennifer Grabianski, *et al.*, on behalf of themselves and all others similarly situated

    Plaintiff,

v.

Bally Total Fitness Holding Corporation,

    Defendant.

Case No. 12 C 284

<u>MEMORANDUM OPINION AND ORDER</u>

In this protracted and heavily litigated dispute, plaintiffs seek damages for losses they claim to have incurred when their "Premier" or "Premier Plus" memberships at defendant Bally's nationwide network of fitness centers became essentially worthless to them after Bally sold their local gyms to L.A. Fitness. Before me are cross-motions for summary judgment on plaintiffs' claim that defendant's conduct breached their membership agreements. For the following reasons, I deny both motions.

I.

Notwithstanding the regularity with which the word "disputed" appears in their respective factual submissions, the

parties offer broadly consistent accounts of the events giving rise to plaintiffs' claim. Although many of the facts are nominally disputed, my review of the record reveals that a substantial portion of these disputes are not, in fact, either genuine or material. The brief factual summary that follows is based on facts for which I conclude there is admissible supporting evidence in the record.

Each plaintiff purchased a Bally membership at some point between 1989 and 2002.[1] At the time, Bally offered a variety of membership plans ranging from "Limited" plans granting access to a single club to "Premier" and "Premier Plus" plans, which provided members with "the use of all local and nationwide Bally Total Fitness clubs." Stapleton Agreement, Pl.'s L.R. 56.1 Stmt., Exh. 1 at ¶ 20. Each plaintiff purchased, from either a Bally club[2] or a Bally member entitled to transfer his or her membership, a Premier or a Premier Plus plan. The cost of these plans included an upfront payment ranging from a few hundred to over a thousand dollars, and most also included monthly or annual membership dues. At least three of the plaintiffs who

---

[1] Plaintiff Eugene Fridman received his membership as a gift, but the distinction is not material at this juncture.

[2] A portion of plaintiff Fridman's membership agreement, which was produced by defendant in this litigation, was apparently with an entity called "Dallas Health Clubs, Inc.," which I assume was later acquired by Bally. *See* Acquaviva Decl. at ¶ 4. ("Bally was formed through combinations of health clubs operating in various states throughout the country, including Vic Tanny and Jack LaLanne, among others.") (DN 214)

2

purchased their memberships from former Bally members—Grabianski, Stapleton, and Raecek—submitted paperwork to Bally, which included their names and addresses, to effectuate the membership transfer.

In the ensuing years, plaintiffs frequented Bally facilities located near their homes. In November of 2011, these clubs were transferred to L.A. Fitness pursuant to an Asset Purchase Agreement (the "APA") in which L.A. Fitness acquired 171 of Bally's clubs. As part of the APA, defendant also transferred to L.A. Fitness the memberships of members whose "home clubs" were among the clubs L.A. Fitness purchased. Plaintiffs' memberships were not transferred in this manner.

Indeed, after the APA closed, plaintiffs tried to continue using their local clubs under the new ownership, but they were denied access to the clubs on the basis that their "home clubs" had not been transferred to L.A. Fitness.[3] This was the first plaintiffs learned of the "home club" designation, which was not

---

[3] Grabianski, who lives in Illinois, discovered that her home club was in New York, where the member from whom she had bought her membership resided. Fridman, who had been living in Arizona for several years, learned that his home club was in Texas, where he had lived at the time his membership was purchased. Raecek's home club was in Connecticut, where he had purchased his membership in 1989, although he had lived in Florida since 1992. Dromgoole, who lives in southern New Jersey, learned that his home club was in a different region of the state, where its original owner had purchased his membership. Stapleton, who lives in Elmhurst, Illinois and purchased his membership from a former member in St. Louis, Missouri, learned that his home club was in Crestwood, Missouri.

defined in their membership agreements. Plaintiffs received conflicting information from employees of both companies about whether their Bally memberships would be transferred to L.A. Fitness, but all were told at some point that their memberships could not be transferred. While plaintiffs were still entitled, at that point, to use any club that Bally retained after the APA, none was reasonably accessible to them because all were located in different geographic regions.

Upon learning that some Bally members whose memberships were not transferred to L.A. Fitness wished to be transferred, the two entities entered into a protocol for effectuating their transfer. According to defendant, "[a]ll a member had to do to effect this post-APA transfer was to request that his or her membership be transferred. The only other requirement was that the membership must not have been expired for more than 90 days. Provided the member made a request, and his or her membership was not expired by more than 90 days, the membership was transferred." Acquaviva Decl., ¶ 11 (DN 214). But that was not plaintiffs' experience, as explained above. Instead, plaintiffs received a variety of explanations for why their memberships could not be transferred to L.A. Fitness, including that the "window" for requesting a transfer had closed.

4

Ultimately, all of the plaintiffs' memberships were transferred to L.A. Fitness, but not before several of them purchased gym memberships elsewhere.

II.

Defendant argues that it is entitled to summary judgment for three separate, independently dispositive reasons. First, defendant claims it is not the proper defendant, since it is merely a holding company with no contractual relationship with any plaintiff. Second, defendant argues that plaintiffs cannot establish the terms of the contracts on which they rely because only Stapleton has produced his membership agreement. And third, defendant insists that its conduct was consistent with the membership agreements in the record. In their joint response and cross-motion, plaintiffs argue that defendant should be precluded or estopped from asserting its "proper party" defense because it gave no inkling of that defense prior to summary judgment. Plaintiffs further contend that the undisputed facts establish that defendant "effectively terminated" their membership rights in violation of their membership agreements when it imposed undisclosed "home club" designations that prevented or delayed their transfer to L.A. Fitness.

Before analyzing the substantive merits of these arguments, I note that while defendant excoriates plaintiffs for every real

5

or perceived failure to adhere to the letter of Local Rule 56.1, its exaggerated attack on plaintiffs' submissions itself violates the spirit of the local rule, and has made the task of ascertaining the existence or non-existence of undisputed material facts not just daunting but utterly overwhelming. As I have reminded litigants in the past, the purpose of L.R. 56.1—which requires the parties to set forth and respond to concise factual statements, and to identify the specific portions of the record that support their assertions—is to assist courts in determining which facts are material and genuinely in dispute. *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013) (citing *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010)). L.R. 56.1 submissions are not the proper venue for presenting legal arguments or for developing whatever "spin" the parties wish to place on the facts. *See, e.g., Hinman v. M and M Rental Center, Inc.*, 596 F. Supp. 2d 1152, 1154 n. 1 (N.D. Ill. 2009); *Bullock v. Dart*, 599 F. Supp. 2d 947, 950 (N.D. Ill. 2009); *Wiegel,* 946 F. Supp. 2d at 809-10 and n. 4 (N.D. Ill. 2013).

Defendant is plainly aware of these principles, and, indeed, articulates some of the reasons compliance with L.R. 56.1 is warranted:

> Short of conducting a trial, analyzing and ruling on a summary judgment motion is the most arduous, time-consuming task that a court can undertake. This

> effort, which is doubled in the case of cross-motions, taxes already stretched judicial resources to the limit. Accordingly, it is not surprising that the local rules of most District Courts, including this one, prescribe strict technical requirements for both moving and opposing papers. These requirements are not arbitrary, and are essential to allowing the court to accurately determine if there are genuine disputes of material fact. Given the clarity of this Court's Local Rules, a party who disregards the simple and few things the Court has demanded deserves to have his or her papers stricken.

Def.'s Mot. to Strike Mem., at 1 (DN 252). Despite these remarks, defendant devotes pages upon pages of its summary judgment submissions to lambasting plaintiffs for procedural shortcomings—many of which are of no practical significance, as the examples below illustrate[4]—eclipsing its substantive arguments and ultimately making it more difficult, rather than less, to focus on the issues that matter. Indeed, defendant's L.R. 56.1 responses (which, it bears noting, are themselves replete with misplaced legal argument and boilerplate objections) are accompanied by a multiplicity of motions to strike and additional filings (including one captioned "Objections to Plaintiff's (A) Evidence; and (B) Response to Defendant's Statement of Material Facts…"), all of which raise

---

[4] For example, defendant uniformly objects to plaintiffs' exhibits on the basis that they have not been authenticated by affidavit. Defendant does not, however, appear to assert that any of the documents is something other than what plaintiffs claim it to be. In any event, the October 10, 2014, Declaration of Michael T. Fantini, which plaintiffs filed in response to defendant's objections, cures the bulk of defendant's objections.

7

substantially similar arguments. This staggering proliferation of paper is "exhausting and wasteful for everyone involved" and is entirely disproportionate to the defects defendant identifies in plaintiffs' papers. *Wiegel*, 946 F. Supp. 2d at 810 n. 4.

Further complicating matters, defendant steadfastly refuses to concede a single fact plaintiffs assert, even where defendant relies on those very facts in support of its own summary judgment motion. For example, the very first paragraph of defendant's L.R. 56.1(a)(3) statement of material facts reads:

> Plaintiff, Jennifer Grabianski ("Grabianski"), is an individual and resident of the State of Illinois. (First Amended Complaint "FAC" ¶ 19). Plaintiff, Jack Stapleton ("Stapleton"), is an individual and resident of the State of Illinois. (FAC ¶ 20). Plaintiff, Eugene Fridman ("Fridman"), is an individual and resident of the State of Arizona. (FAC ¶ 21). Plaintiff, Edward Raecek ("Raecek"), is an individual and resident of the State of Florida. (FAC ¶ 22). Plaintiff, Brian M. Dromgoole ("Dromgoole"), is an individual and resident of the State of New Jersey. (FAC ¶ 23).

Def.'s L.R. 56.1 Stmt. at ¶ 1 (DN 212). Plaintiff's response to this assertion is: "This is undisputed." Indeed, the first paragraph of *plaintiffs'* L.R. 56.1(a)(3) statement is identical, except that in addition to citing the FAC, it cites specific pages of plaintiffs' deposition testimony. Pl.'s L.R. 56.1 Stmt., Part B at ¶ 1 (DN 226). Nevertheless, defendant responds to plaintiffs' statement as follows:

> Disputed. Plaintiffs' references to the allegations in their First Amended Complaint are not evidence.

8

> *See BPI Energy Holdings, Inc. v. IEC* (Montgomery), LLC, 664 F.3d 131, 135 (7th Cir. 2011) ("allegations are not evidence."). Additionally, Bally objects to Plaintiffs' cited exhibits because they are unauthenticated, hearsay, lack foundation, and, therefore, are inadmissible. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("The evidence supporting a factual assertion must represent admissible evidence."); Fed. R. Evid. 802 (hearsay evidence inadmissible); Fed. R. Evid. 602 (witness must have personal knowledge of the matter about which testified); Fed. R. Evid. 901 (unauthenticated evidence inadmissible); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (unauthenticated documents submitted in summary judgment briefing are inadmissible hearsay). Plaintiffs have not submitted any competent, admissible evidence in support of these asserted facts.

Def.'s L.R. 56.1 Resp. at ¶ 1 (DN 293). Aside from pointing out that allegations are not evidence (though, as noted above, plaintiffs also cite to deposition testimony, which is), this response is far more distracting than helpful. While some of defendant's evidentiary objections may be technically correct, what is the point of disputing facts with which defendant plainly agrees?[5] Defendant's lengthy boilerplate, which includes such ill-fitting objections as the witnesses' lack of personal

---

[5] Defendant similarly disputes plaintiffs' second factual statement, which asserts that "[t]his Court has personal jurisdiction over Bally because it maintains its principal headquarters in the State of Illinois," even though defendant's own factual statement asserts that its principal executive office is in Chicago, and its answer to the FAC admitted personal jurisdiction. Def.'s L.R. 56.1 Resp. at ¶ 2 (DN 293); Def.'s Ans. to FAC at ¶ 17 (DN 128).

9

knowledge (about their own states of residence?), is equally ill-considered.

Defendant proceeds in this manner throughout the substantive portions of its L.R. 56.1 submissions, however, regardless of whether there is any genuine dispute over the asserted facts. For example, defendant asserts in ¶ 32 of its factual statement that "[o]n or about November 30, 2011, Bally and LAF entered into an Asset Purchase Agreement ("APA") in which the majority of the clubs owned and operated by Bally's subsidiaries were sold to LAF," citing the FAC and a declaration by one of defendant's executives, Earl Acquaviva, Jr. The cited paragraph of the Acquaviva declaration adds, "Bally sold to LAF 171 of its clubs and certain memberships associated with those clubs." Acquaviva Decl. ¶ 6. (DN 214).

These facts are materially indistinguishable from those plaintiffs assert in ¶ 11 of their L.R. 56.1(a)(3) statement, which reads:

> In November 2011, Bally and LAF entered into the APA whereby Bally sold 171 of its 271 clubs to LAF, which included selling all Bally clubs that existed in numerous states and "Designated Areas" as defined by the APA. (Ex. 4 Midwig Dep. pp. 22, 80, 84, 91; Ex. 11 Salcedo Dep. pp. 48, 50, 52, 71-72, 96; Ex. 46 APA).

Yet, defendant offers this response:

> Disputed. Initially, it is improper for Plaintiffs to cite to a large number of deposition transcript pages (the vast majority of which have no bearing on the

asserted facts) without indicating which evidence purportedly supports this fact. *See Greer v. Bd. of Educ. of City of Chicago, Ill.*, 267 F.2d 723, 727 (7th Cir. 2001) (a summary judgment motion "is not a game of hunt the peanut."); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("district courts. . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them"). Additionally, the allegations regarding Bally selling all of its clubs in "numerous" states and "Designated Areas" are not supported in the cited testimony. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (each paragraph in movant's statement must contain a "specific reference" to "exact pieces of the record that support the factual contention in the paragraph."). Bally also objects to Plaintiffs' cited exhibits because they are unauthenticated, hearsay, lack of foundation, and, therefore, are inadmissible. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("The evidence supporting a factual assertion must represent admissible evidence."); Fed. R. Evid. 802 (hearsay evidence inadmissible); Fed. R. Evid. 602 (witness must have personal knowledge of the matter about which testified); Fed. R. Evid. 901 (unauthenticated evidence inadmissible); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (unauthenticated documents submitted in summary judgment briefing are inadmissible hearsay). Plaintiffs have not submitted any competent, admissible evidence in support of these asserted facts.

Def.'s L.R. 56.1 Resp. at ¶ 1 (DN 293).[6] Plainly, the parties agree on the material facts. Defendant's scorched-earth

---

[6] I have reviewed plaintiffs' cited evidence and find that it supports their statement. The assertion that Bally sold to LAF "all Bally clubs that existed in numerous states and 'Designated Areas,'" which defendant asserts is "not supported by the cited testimony," is supported by Midwig's testimony at pages 81-83 of his deposition. While plaintiffs' citation to pages "80, 84" (rather than "80-84") is thus technically incorrect, the error appears to be typographical rather than substantive. Indeed,

11

response serves only to undermine my ability to rely on its submissions, frustrating the entire purpose of Local Rule 56.1.

What emerges from defendant's overblown approach to these proceedings is that it has lost sight of the ultimate goal of achieving swift resolution of the parties' substantive dispute. Even the October 9, 2014, Declaration of Michael T. Fantini, which plaintiffs submitted in response to defendant's evidentiary objections, was met with a motion to strike. The result of this heavy-handed strategy is that defendant's legitimate objections and disputes—of which there are indeed a number[7]—are lost in the blizzard of inconsequential and repetitive arguments.

Having trudged through the storm as best I can, however, I conclude that the record does not support summary judgment for either party. First, I agree with plaintiffs that defendant is not entitled to summary judgment on the ground—raised for the

---

plaintiffs cite the included pages in ¶ 15 of their factual statement, which identifies the individual states about which Midwig testified.

[7] Indeed, while defendant's excesses warrant the attention I have given them, some of their objections and disputes are meritorious. Although plaintiffs have now cured most of the evidentiary defects defendant identified, their counsel would be well advised, in the future, to ensure that all evidence presented at summary judgment is proffered, at the outset, in a manner that establishes both its authenticity and its ultimate admissibility. Moreover, counsel is admonished to ensure that that each factual assertion: 1) contains a citation to the record; 2) accurately reflects the substance of the cited material; and 3) is limited to the presentation of facts, rather than legal argument.

first time after three years of litigation—that it is not a proper party to plaintiffs' breach of contract claim. Defendant argues that it need not have raised the issue as an affirmative defense because plaintiff bears the burden of establishing the existence of a valid contract. The same could be said, of course, of a number of the twenty-two affirmative defenses defendant *did* raise in its amended answer. (In fact, defendant prefaced those defenses with the statement that "any affirmative defense hereinafter does not assume the burden of proof for any issue as to which applicable law places the burden upon Plaintiff.") (DN 128) More importantly, neither of the cases defendant cites for its argument specifically addresses the "proper party" defense, which two courts of appeals have held is indeed an affirmative defense that is waived unless the court grants leave to amend the pleadings. *Jordan v. City of Baton Rouge*, 192 F.3d 125, 1999 WL 683794 at *3 (5th Cir. 1999); *Bokunewicz v. Purolator Prods., Inc.*, 907 F.2d 1396, 1402 (3d Cir. 1990).

Moreover, even if the defense is not waived entirely for defendant's failure to plead it, the result of defendant's silence is that plaintiffs have not conducted discovery on issues that bear upon whether defendant can be held liable for breach of the membership agreements, regardless of whether it was a party to them. Defendant is correct that parent

13

corporations and subsidiaries are distinct legal entities and are not generally liable for each other's wrongdoing. *See Main Bank of Chicago v. Baker*, 427 N.E. 2d 94, 101-02 (Ill. 1981). Nevertheless, a parent corporation "could be held liable for the actions of its subsidiaries where the parent directly supervised the conduct of a specific transaction." *Esmark, Inc. v. Nat'l Labor Relations Bd.*, 887 F.2d 739, 755-56 (7th Cir. 1989) (noting that while ownership of a subsidiary's stock "does not fuse the corporations…[o]ne corporation may, however, become an actor in a given transaction, or in part of a business, or in a whole business, and, when it has, will be legally responsible.") (citation omitted).

Here, it is undisputed that defendant is the entity that entered into the APA, which is the central transaction giving rise to the alleged breach of plaintiffs' respective contracts, while the relationship between defendant and the various contracting entities otherwise remains unexplored. Accordingly, it would be inappropriate to grant summary judgment for defendant when plaintiffs have not taken discovery on issues such as those identified in the September 2, 2014, Declaration of Michael T. Fantini, relating to defendant's corporate structure and which entity or entities had responsibility for the conduct giving rise to their claim. While plaintiffs appear to have been aware all along that defendant is a holding

company, and thus might have anticipated that discovery on these issues would be necessary, they cannot wholly be faulted for concentrating their efforts elsewhere in the absence of any indication that defendant intended to pursue this defense.

As for the fact that four out of the five plaintiffs have not produced their membership agreements, there is no dispute that each plaintiff's membership plan provided nationwide access to Bally clubs. *See* Def.'s L.R. 56.1 Stmt. at ¶¶ 11-15. While it is true that only Stapleton has produced his membership agreement, Bally produced many more "sample" agreements reflecting material terms that are substantially the same as those in Stapleton's agreement. The evidence defendant points to regarding "variation among the contractual terms of the individual memberships," while presumably relevant to damages and to issues bearing on plaintiffs' request for class certification, do not preclude a jury from finding liability based on the undisputed facts and the contracts contained in the record.

This leaves only the parties' competing arguments about whether the facts do, or do not, amount to a breach of plaintiffs' membership agreements. Although the material facts appear to be largely undisputed, this issue cannot be resolved on summary judgment because reasonable minds could differ as to whether defendant's conduct was consistent with not only the

express terms of the membership agreements, but with plaintiffs' reasonable expectations based on those terms.

Defendant argues that its conduct cannot violate plaintiffs' membership agreements because no agreement in the record contains a provision guaranteeing that a member's "preferred club" would never close or be sold to another entity. To the contrary, defendant insists, the agreements expressly contemplate club closure and reserve Bally's right to close any of its facilities in its sole discretion. Defendant also argues that the membership agreements explicitly provide a remedy to members in the event of club closure, which plaintiffs could have but did not invoke. These arguments do not compel summary judgment in defendant's favor.

First, while it is true that defendant retained the absolute right to close clubs, and provided members a specific remedy in that event—the right to cancel their memberships, which was otherwise subject to restrictions, and to seek a pro rata refund of prepaid membership fees—it is far from clear that plaintiffs could have invoked that remedy. Defendant cites ¶ 8 of Stapleton's membership agreement, which provides:

> You may cancel this Contract *if your club of enrollment permanently closes* and you live more than 25 miles from any other club which you are entitled to use under the membership plan you have chosen or any substantially similar facility which will honor your membership at no additional charge.

Pl.'s L.R. 56.1 Stmt., Exh. 1 at ¶ 8 (emphasis added). Of course, the whole problem here was that plaintiffs' respective "club[s] of enrollment," i.e., their "home clubs," did *not* close pursuant to the APA—that is why their memberships were not transferred to L.A. Fitness.[8] *See* Def.'s L.R. 56.1 Stmt. ¶ 43 (DN 212) ("In all circumstances, the 'home club' was the club of enrollment"). Accordingly, it appears that plaintiffs could not have invoked ¶ 8 of their membership agreements.

Moreover, other provisions in the membership agreement inform how the parties reasonably expected that an event such as the APA—which the agreements do not explicitly contemplate—would be handled. Stapleton's agreement, like others in the record, contains a provision titled "Assignment," which authorizes defendant, in its discretion, to assign "all rights and powers" it has under the agreement to an assignee. While it is true that this provision does not guarantee assignment, but instead vests defendant with discretion to assign its contractual rights, a jury could find that defendant exercised this discretion arbitrarily and inconsistently with plaintiffs' reasonable expectations when it invoked the "home club" concept

---

[8] Defendant's position is that "every club sold to LAF was closed in the sense that Bally went out of business at that location when each ceased to be a Bally club and became an LAF club." Def.'s L.R. 56.1 Resp. at ¶ 18.

17

as a basis for declining to assign their memberships to L.A. Fitness, violating its duty of good faith and fair dealing.[9]

The duty of good faith and fair dealing, implied in every contract, comes into play "when one party is given broad discretion in performing its obligations under the contract." *Gore v. Indiana Ins. Co.*, 876 N.E. 2d 156, 161-62 (Ill. App. 2007). The covenant requires the party vested with discretion "to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations." On the facts summarized above, a jury could conclude that Bally's conduct deprived plaintiffs of the benefit of the bargain they reasonably expected when they paid a premium to obtain renewable, Premier or Premier Plus plans granting them access to all "local and nationwide" Bally clubs. Indeed, defendant's acknowledgment that more than 11,000 Bally memberships were transferred to L.A. Fitness pursuant to the APA, and its explanation that "all a member had to do to effect a post-APA transfer was to request that his or her membership be transferred," Def.'s L.R. 56.1

---

[9] Defendant is wrong to suggest that a claim of this nature does not survive my dismissal of plaintiffs' original complaint. As I explained in that decision, "the implied covenant guides the interpretation of contractual provisions, and requires a party afforded discretion by a contractual provision to exercise it 'in a manner consistent with the reasonable expectations of the parties.'" (DN 75) (quoting *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1445 (7th Cir. 1992).

18

Stmt. ¶ 47 (DN 226), could reasonably be construed to suggest that *all* parties to the membership agreements expected that members' rights would be assigned in the event of a transaction such as the APA. Accordingly, a jury could conclude that defendant's failure to transfer plaintiffs' memberships to L.A. Fitness (or defendant's belated, post-litigation transfer) violated its duty of good faith and fair dealing.

III.

For the foregoing reasons, the parties' cross-motions for summary judgment are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 26, 2015